8015

## IRVINE v. TOWN OF GREENWOOD.

1. CITIES AND TOWNS—STREETS.—All powers granted to cities and towns by the General Assembly under the sanction of the Constitution are to be exercised as public and governmental functions. So the construction and operation under legislative authority of electric light plants used for lighting the streets and for supplying the citizens with electric current for domestic purposes is a corporate and not a private purpose.

2. IBID.—A city is liable for injury to one on the street caused by his coming in contact with a metal chain hanging by the side of an electric light poll, used in lowering the arc light on the street, heavily charged with electricity, under section 2023 of the Code of 1902, making cities and towns liable for damages caused by defects in the streets.

3. IBID.—CHILDREN—ISSUES.—It should not be laid down as a proposition of law, applicable to all cases, that playing in a street by boys and girls while they are still of the age of youthful sportiveness is an illegitimate use of a street. So it is held whether a boy of seventeen is making an illegitimate use of a street by playing in it and whether he is guilty of contributory negligence while so playing in taking hold of a chain suspended from an arc light, are issues for the jury.

Before SHIPP, J., Greenwood, October term, 1909. Reversed.

Action by H. E. Irvine, administrator of W. Claude Irvine, against the Town of Greenwood and the Commissioners of Public Works. Plaintiff appeals.

*Messrs. Tillman & Watson* and *Cothran, Dean & Cothran,* for appellant.

*Messrs. Cothran, Dean & Cothran* cite: *A municipal corporation in its proprietary functions is liable for all torts committed:* 19 S. C. 412, 286, 412; 20 S. C. 116, 213; 68 S. C. 163; 70 S. C. 137; 5 L. R. A. (N. S.) 536; 1 Dill., sec. 66; 199 U. S. 437; 5 Cal. 307; 7 Cal. 361; 9 Cal. 469; 16

Cal. 256; 21 Cal. 113; 43 L. R. A. 435; 72 Am. Dec. 730; 60 Pac. 985; 67 Pac. 300; 19 L. R. A. 452; 3 Am. R. 485; 52 L. R. A. 417; 27 L. R. A. 206; 22 L. R. A. 561; 23 Am. R. 347; 4 Am. St. R. 608; Tiedman Mun. Corp. 336; 9 Am. Rep. 342; 50 Am. R. 517; 55 Pac. 887; Shearm. & Redf. Neg., secs. 286, 289; 2 Thomp. Neg. 652; 60 Am. Dec. 65; 44 S. C. 173. *It is liable under the statute for all torts resulting from defects in streets:* Code 1902, 2023; 43 S. C. 398, 284; 75 S. C. 560. *Plaintiff must show his injury was not caused by his contributory negligence:* 40 S. C. 342; 57 S. C. 294; 73 S. C. 254; 76 S. C. 206. *Degree of proof requisite:* 1 Thompson Ev., secs. 413, 414; 20 N. E. 287; 43 N. E. 19; 5 Ind. 290; 80 Id. 283; 73 Am. D. 380; 104 Mass. 142; 79 Am. Dec. 725; 47 Am. R. 425; 104 N. W. 721; 11 L. R. A. 365; 70 L. R. A. 119; 34 Cal. 153; 44 Mich. 82.

*Messrs. Grier, Park & Nicholson* and *E. L. Richardson,* contra.

*Messrs. Grier, Park & Nicholson* cite: *Governmental agencies of towns:* Code 1902, 2008; 33 S. C. 1; 41 S. C. 252; 79 S. C. 316; 213 U. S. 151. *Construction of act of 1892 in Dunn v. Barnwell, 43 S. C. 398, is unchanged by codification:* 58 S. C. 413; 66 S. C. 448; 70 S. C. 142; 75 S. C. 560. *Use of street as playground is not proper:* 48 Am. St. R. 553; 24 Am. R. 23. *Testimony shows no defect in street:* 13 Gray 59; 91 Am. D. 718.

*Mr. E. L. Richardson* cites: *Commissioners are not liable for a tort:* 77 S. C. 12; 79 S. C. 363. *Is town operating a light plant liable for negligence independent of statute?* 20 S. C. 412; 68 S. C. 163; 30 L. R. A. 660. *Appellant must show a defective street:* 43 S. C. 398; 58 S. C. 413; 66 S. C. 412; 29 S. C. 161. *Burden is on plaintiff to show he was free from fault:* Williams Mun. Torts 121-2-3, 134.

October 2, 1911.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.  The town of Greenwood owns and operates a municipal lighting plant for the purpose of lighting its streets, and furnishing electric current to its citizens for domestic purposes.  This plant is controlled and managed by a board of public works, composed of three commissioners, elected by the qualified electors of the town, who are vested by section 2010 of the Civil Code, volume I, with full power and authority to build, maintain, operate and manage the plant.  This action was brought against the town of Greenwood and the board of public works by H. E. Irvine, as administrator, to recover damages for the alleged unlawful and wrongful killing of his son, Claude Irvine.  The facts, as alleged in the complaint, and established by the plaintiff's evidence, are these: On August 23, 1908, the deceased, a boy of seventeen years of age, was engaged with two companions in playing a game known as "peg" on Jordan street, in the town of Greenwood, not far from its intersection with Parker street.   On the side of Jordan street, a few feet from the point of intersection, and on the edge of the drain between the sidewalk and the street, was an electric light pole from which an arc light was suspended.  A metallic chain, used for the purpose of raising and lowering the light, hung down the side of the pole next to the street and formed a loop about five or six feet above the ground.  As Irvine, in the course of the game, was running from the street to the sidewalk near this post, he slipped on the edge of the drain, caught hold of the loop in an effort to save himself from falling, and was killed by a strong electric current transmitted to his body through the chain.

The complaint alleged in substance three acts of negligence and wantonness on the part of the defendants: First, that they had allowed the chain to come in contact with the wires overhead and to hang a short distance above the

33—89

street, so that any traveler might touch it; second, that the defendants had removed or allowed to be removed the insulation from the wires at the point of contact with the chain; third, that they had failed to equip the light with proper safety appliances. The defendants demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action, in that no action would lie against a municipality or its agent for negligence in carrying on its corporate functions, unless such action were authorized by statute, and that no liability had been created by statute under the facts stated.

The Circuit Court sustained the demurrer as to the defendant, the Board of Public Works, but overruled it as to the defendant, the Town of Greenwood, holding that the acts of negligence specified in the complaint might be considered as a defect in the street, and that under section 2023 of the Civil Code, volume I, an action would lie against a municipality for injuries resulting therefrom. At the close of the plaintiff's testimony the defendant moved for a nonsuit, which was granted by the Court on the ground that the plaintiff had failed to prove that the deceased had not been guilty of contributory negligence when he received the injury. From this order of nonsuit the plaintiff appeals.

Whenever the question has arisen it has been held in this State that a municipality is not liable in damages for a tort committed by any of its officers or agents unless made so by statute. *White* v. *City Council of Charleston,* 2 Hill 572; *Coleman* v. *Chester,* 14 S. C. 290; *Black* v. *City of Columbia,* 19 S. C. 412; *Gibbes* v. *Beaufort,* 20 S. C. 213; *Parks* v. *Greenville,* 44 S. C. 168, 21 S. E. 540; *Matheney* v. *Aiken,* 68 S. C. 163, 47 S. E. 56. Counsel for plaintiff, while acknowledging the authority of these cases, insist that they should be limited in application to such torts as are committed by a municipality in the exercise of its public and governmental functions, and should be held to have no application to torts committed by a municipality in

the conduct of a business authorized by law for the advantage of the municipality, but distinct from the public or governmental functions of the corporation. The distinction contended for has the sanction of very high authority, including the Supreme Court of the United States. *South Carolina* v. *United States,* 199 U. S. 437; *Oliver* v. *Worcester,* 102 Mass. 489; 1 Dillon on Mun. Corp., sec. 66. The numerous other authorities on the subject are collated in 28 Cyc. 1257-8, 20 Am. & Eng. Ency. 1191, 1 L. R. A. (N. S.) 664, 30 Am. St. Rep. 376.

Notwithstanding this weight of authority we think there are cogent reasons for rejecting the distinction. The question was not decided in *Mauldin* v. *Greenville,* 33 S. C. 1, 11 S. E. 434. There the Court held that in the absence of express bestowal by the legislature on the city of Greenville of the power to construct and maintain a plant to furnish electric lights in private residences and business houses, such a power was not implied in the general grant of authority "to make and establish all such rules, by-laws and ordinances respecting the roads, streets, market and police department of said city, and the government thereof, as shall appear to them necessary and requisite for the security, welfare and convenience of said city, for preserving health, life and property therein, and securing the peace and good government of the same." Here the question is whether the exercise of a particular power expressly conferred on a municipal corporation—a governmental agency—by the General Assembly shall be held to be a governmental function,. or on the same legal footing as an ordinary business enterprise of a private corporation. The distinction was referred to in *Childs* v. *City of Columbia,* 87 S. C. 566, but no opinion as to its soundness was expressed, the case having been decided on other grounds.

In *Hopkins* v. *Clemson College,* 77 S. C. 12, 57 S. E. 853, the question was whether Clemson College, a corporation created for a public purpose, was liable for overflowing

plaintiff's land in constructing a dike to protect the crops on the college lands from the floods in the Seneca River. This Court held that the case fell within the rule laid down in *Gibbes* v. *Beaufort,* 20 S. C. 213; *Dunn* v. *Barnwell,* 43 S. C. 398, 21 S. E. 315, and the other cases decided in this State cited above, and that therefore the plaintiff could not recover. On appeal the Supreme Court of the United States reversed the judgment of this Court, holding that the flooding of plaintiff's land was the taking of private property without due process of law, and that the taking was by the corporation itself for corporate purposes and not by its officers or agents. As we understand, it was on these grounds that the case was distinguished from *Gibbes* v. *Beaufort, supra,* and other like cases decided in this State. The doctrine of the decision, however, is not applicable to this case for the reason that here there is no taking of private property by the corporation, but an injury resulting in death from the alleged failure of an employee of the municipality to perform the duties imposed on him by the municipality.

In endeavoring to put into practical effect the supposed distinction between public function and private business or enterprise of municipal corporations, it will hardly be doubted that the Courts will find themselves involved in a maze of shadowy distinctions. Where is the line of demarkation to be drawn? If it could be satisfactorily laid out now, it could not long continue to receive general recognition; for the functions of government, especially municipal government, are being extended almost every day. That which today might clearly appear to be a private business of the corporation, authorized by law, in a short time might appear to be a plain public obligation and a governmental function. Take for example the water supply of a city. A short time ago it was held that while a city exercised a public function in providing water for its fire engines, although used almost exclusively for the protection

of private property, yet when it ran pipes to private houses and there supplied water to its inhabitants for drinking and other domestic purposes, it was acting outside of true governmental functions and engaging in private business. *Judson* v. *Borough of Winsted* (Conn.), 68 Atl. 999. At this time it will hardly be doubted that when a city under legislative sanction undertakes to furnish water to its inhabitants it performs a public and governmental function; for nothing can be more important to the municipal public than the prevention of disease, and nothing so promotes the public health as a supply to all citizens of pure water. This is but an illustration of the truth that with advancing civilization not only do the duties of individuals increase, but the public and governmental duties and functions of the State and of municipalities embrace more subjects.

Expressing the inclination of the Court to reject the distinction contended for, Mr. Justice McGowan says in *Black* v. *Columbia*, 19 S. C. 412: "With all due respect, it seems to us that if the powers granted to a municipal corporation are susceptible of such division and separation, it would be exceedingly difficult to carry the doctrine into anything like uniform practice. Opinions must certainly differ, both as to the proper classification of the powers and the character of the duty imposed by them. The necessity of determining, in each case, whether a particular power should be ranked in the class of corporate as distinguished from civil powers; and, if the former, whether its exercise imposes a duty, discretionary or merely ministerial, must be the source of constantly recurring difficulties, and tend to great confusion and uncertainty in the administration of the law."

The confusion which has resulted from the refinements and distinctions attempted by other Courts with respect to the liability of municipal corporations for torts committed by officers or employees is so great that it would be difficult if not impossible to deduce from them a rule which could

be applied with confidence by the public or the bar. This is made apparent by the study of any well considered text or opinion on the subject, such as the opinion of Chief Justice Gray in *Hill* v. *Boston,* 122 Mass. 344, 23 Am. Rep. 332, and the note to *Goddard* v. *Harpswell* (Me.), 30 Am. St. Rep. 376.

After much consideration of the authorities in this State and elsewhere it seems to us the more logical conclusion that the Courts should not undertake to say that any functions of a municipal corporation are private and not governmental, but on the contrary should hold that municipal corporations are created solely for public and governmental purposes, and that all powers granted to them by the General Assembly under the sanction of the Constitution are to be exercised as public and governmental functions for the benefit of the municipal community. Indeed this view of powers granted is required by the definition of a municipality, for an essential part of the definition is that the charter be granted for the purpose of subordinate self-government. Certain it is that sections 3, 4 and 5 of article VIII of the Constitution of this State contemplate that the construction and operation of water and electric plants, not only for the purposes of the corporation, strictly speaking, but for supplying citizens of the municipality with light and water, shall be a public purpose for which the municipality may incur debts and levy taxes.

There is another strong reason for the rejection of the distinction contended for, which applies with special force in this State. Municipalities are brought into existence by the legislative branch of the government, and it is peculiarly the province of the General Assembly not only to confer the powers but to determine the extent of the liability of such corporations. Having in view the doctrine long ago laid down by the Courts of this State that municipal corporations are liable for torts only when made so by legislative enactment, the General Assembly has by law expressed

its will as to the extent of the liability of such corporations for torts. The Courts are therefore bound to restrict the liability to the terms of the statute; and the statute authorizes no distinction between governmental and public duties and supposed private municipal enterprises.

But even if the distinction contended for were recognized, we do not think this case could fall under it. The death of plaintiff's intestate was due to contact with a wire suspended from a pole supporting one of the arc lights put up for the purpose of illuminating the streets of the town of Greenwood. The lighting of the streets of a city is universally recognized as a public and governmental function. It cannot alter the case that the same plant which supplied electricity for the street light also supplied the electricity for the lights in private dwellings and business houses.

The next question is whether the alleged tort of the municipal authorities fell within the terms of the act of 1892 (21 Stat. 91), now incorporated in the Civil Code as section 2023, which reads as follows: "Any person who shall receive bodily injury, or damages in his person or property, through a defect in any street, causeway, bridge, or public way, or by reason of defect or mismanagement of anything under the control of the corporation within the limits of any town or city, may recover, in an action against the same, the amount of actual damages sustained by him by reason thereof. If any such defect in a street, causeway or bridge existed before such injury or damage occurred, such damage shall not be recovered by the person so injured if his load exceed the ordinary weight: *Provided,* The said corporation shall not be liable unless such defect was occasioned by its neglect or mismanagement: *Provided, further,* Such person has not in any way brought about such injury or damage by his or her own negligent act, or negligently contributed thereto."

In the case of *Dunn* v. *Barnwell,* 43 S. C. 398, 21 S. E. 315, the Court, construing the statute in the light of its title,

held that the liability created by it was limited to misfeasance or nonfeasance connected with the keeping of "any street, causeway, bridge or public way" in proper repair. This construction has been followed in cases arising since the statute was incorporated in the Civil Code. *Hutchison* v. *Summerville,* 66 S. C. 448, 45 S. E. 8; *Bryant* v. *Orangeburg,* 70 S. C. 142, 49 S. E. 229.

But we are unable to give the duty of keeping streets in repair the narrow meaning contended for by respondents. To keep a street in repair means to keep it in such physical condition that it will be reasonably safe for street purposes. It is not enough that its surface should be safe; a street is not in repair when poles or wires or other structures are so placed in or over it as to be dangerous to those making a proper use of the street. In *Duncan* v. *Greenville,* 71 S. C. 170, 50 S. E. 675, it was held that a wagon left on the public road so as to put travelers in peril must be regarded under the statute as a failure to keep the road in repair. In this case the pole was placed in the street as a fixture and became a part of the street, which it became the duty of the municipal authorities to keep safe.

Forceful argument was presented in support of the position that no cause of action arose because the street was safe for the ordinary purposes of travel, and plaintiff's intestate, who was seventeen years of age, would not have been killed if he had not been using the street for the purpose of playing a ball game, a purpose for which it was not intended; and that the nonsuit must be sustained on that ground. The Court has given much consideration to this question, important not only to the parties in this case, but to the general public.

There can be no doubt that the main purpose of streets and roads is for travel. They serve this purpose not only as avenues of traffic and of social communication, but as a means for the people to obtain at will the pleasurable sensation of locomotion and change of scene and environment.

In furtherance of these purposes, streets and roads are now burdened with street railways and trolley lines. The necessity of having the streets lighted in order that they may serve these purposes make any reasonable means to that end, such as the placing of electric light wires, a proper burden on the streets of a town or city. But while those mentioned above are the main and dominant purposes of a street, to which when the occasion arises others must yield, still there are other purposes for which streets and roads have always been used, and which become more and more urgent as population becomes more and more dense. One who wishes to build on a city lot must often of necessity be allowed temporary use of a portion of the street for placing his material. Streets and roads are often used for public meetings held for the enlightenment or amusement of the people. So, likewise, children and youths have always used streets for their sports, subject to the regulation of municipal ordinance and subject to the use of the streets for the other purposes above set out. The necessity for reasonable use of this kind becomes constantly more pressing with the increase in the size of towns and cities, and the decrease of home space. To vast numbers of boys and girls the street affords the only place of sport and the only outlook from a pent up home. The interest of the State is no less vital that these boys and girls should have a place for development of body and spirit by out of door sport than its interest that they should have the public school as a place for mental training. Indeed, it is not to be doubted that arrested and abnormal development of men and women which results in the great burden of crime borne by society is due largely to the lack of parks and playgrounds where the joy of activity in the fresh air may be found.

It is no doubt true that the primary duty of the municipal authorities is to keep the streets safe and in good condition for travel, and if in doing that it becomes necessary to make them unfit and dangerous for the play of boys and

girls, no responsibility falls on the municipality; and it is also true that the police power extends to forbidding play in streets dangerous or unfit for that purpose from any cause; nevertheless, municipal authorities are bound to take notice and have a reasonable regard for the fact that many streets are used for the play of boys and girls and that they may be properly so used without material interference with the main uses above set out.

Viewing the general use of the street by boys and girls for play, and the long acquiescence by the public in such use when it has not interferred with the other uses mentioned, and considering the widening scope of the duties of the State, and especially of municipal corporations, to the individual, it seems clear that the Court should not lay it down, as a proposition of law applicable to all cases, that playing by boys and girls while they are still of the age of youthful sportiveness is an illegitimate use of a street, not to be anticipated by the authorities whose duty it is to keep highways in a reasonably safe condition.

The earlier and later authorities on the subject are in direct conflict. The doctrine first held in this country is thus forcibly stated by Chief Justice Bigelow in *Blodgett* v. *Boston*, 8 Allen, 237, which was an action for damages received by a boy eleven years old while engaged in play on a street: "The highway is to be kept safe and convenient for all persons having occasion to pass over it, while engaged in any of the pursuits or duties of life. If this be not the limit beyond which the duty and corresponding liability of cities and towns in relation to the subject matter do not extend, we are unable to see where the line can be drawn. And yet it is plain that there must be some limit. A town cannot be held responsible for every case of damage to person or property which may happen by reason of a defect in a highway, without regard to the use to which it was appropriated at the time of the accident by the person injured. Suppose, for example, a juggler, or gymnast,

should occupy a portion of a street or road to exhibit his feats of skill or agility or strength. He certainly could not be regarded in the light of a traveler while so using the highway, nor could he claim damages of a city or town for injuries sustained by him in his person or property during the performance, although they might have been occasioned in whole or in part by a defect in the highway. Take another example of a different character: A boy, while using a portion of a highway solely for the purpose of enjoying the amusement of sliding over the snow in a sled, meets with an injury attributable to some defect arising from the accumulation of snow or ice. It would hardly be contended that the city or town in which such an accident happened could be held liable for the damages thereby occasioned."

The same doctrine was stated and applied in *Tighe* v. *Lowell*, 119 Mass. 294; and *Hunt* v. *Salem*, 121 Mass. 294. These cases were decided, it is true, under a statute which gave a right of action to "travelers," for injuries received from defects in the highway, while our statute provides for the recovery of damages by "any person who shall receive bodily injury, * * *." But there are other cases laying down the same rule in States where no limitation of the right of action to travelers was expressed in the statute. *Reed* v. *Madison* (Wis.), 17 L. R. A. 733; *Chicago* v. *Starr*, 42 Ill. 177, 89 Am. Dec. 422. The cases cited held, however, that the rule of nonliability extended only to children who were using the street exclusively for play, and not to children who, in going from one place to another, stopped to gratify their curiosity or to indulge their natural tendency to sportiveness, the diversion or play in such cases being regarded as a mere incident of the travel, to be expected of children in their use of streets for travel.

The matter has not been before any Court of last resort in this State, but the conclusion we have stated is in accord with all the later decisions. Modern judicial opinion and

the reason for it is thus expressed in *Gibson* v. *Huntingdon,* 38 W. Va. 177, 18 S. E. 447, 45 Am. St. 853, 22 L. R. A. 561: "Poor parents are unable to provide a place of healthful exercise and play for their children, for it requires all their earnings to clothe, feed and shelter them. The law prohibits them, under the penalty of being trespassers, from entering on the lands of others; and now to forbid them to use the road to its utmost boundary for the purpose of play, when not interfering in any manner with the traveling public, would savor too much of the Dark Ages of barbarism, when children were subject to inhuman diabolical punishments, and their lives were at the mercy of those having charge over them. The roads are the only commons children now have, and to confine them in the narrow limits of their tenement houses would be cruel, unjust and oppressive, blight their young lives, and render their bodies weak, sickly, scrofulous and vile."

The same principle has been applied in the following cases: *Owensboro* v. *York* (Ky.), 77 S. W. 1130; *Covington* v. *Drexilius,* 120 Ky. 87, 87 S. W. 266; 117 Am. St. 593; *McGuire* v. *Spence,* 91 N. Y. 308; *Chicago* v. *Keefe,* 114 Ill. 222, 2 N. E. 267, 55 Am. Rep. 860; *Busse* v. *Rogers* (Wis.), 64 L. R. A. 183; *Straub* v. *St. Louis,* 75 S. W. 100; *Stodd* v. *Philadelphia,* 183 Fed. 659; *Augusta* v. *Tharpe* (Ga.), 38 S. E. 389; *Rome* v. *Suddeth,* 116 Ga. 649, 42 S. E. 1032; *Omaha* v. *Richards* (Neb.), 68 N. W. 523; *Indianapolis* v. *Emmelman,* 108 Ind. 530, 58 Am. Rep. 65; *Knox* v. *Troy,* 104 N. Y. 344, 58 Am. Rep. 508; *Vicksburg* v. *McLain* (Miss.), 6 Sou. 774; *Baudin* v. *Bay City* (Mich.), 4 A. & E. Ann. Cases 248, and note; note, 20 L. R. A. (N. S.) 753.

It is true that in the decisions cited the ages of the children injured ranged from three to fourteen years, but we do not think this Court can say, as a matter of law, that a boy of seventeen has passed the age of youthful sportiveness and reached such a mature age that play in the street

is not to be expected of him, nor allowed to him. We express no opinion as to the correctness of the rulings of the Supreme Court of Mississippi in *Jackson* v. *Greenville*, 72 Miss. 220, 48 Am. St. 553, and of the Supreme Court of Massachusetts in *Vosburgh* v. *Moak*, 1 Cush. 453, 48 Am. Dec. 613, that grown men playing with a dog or playing ball on a street are not making a legitimate or permissible use of the street, and cannot recover for injuries due to a defect in the street; for this case is different.

Under some circumstances and in some localities it would no doubt be held an improper use of the street and contributory negligence, as a matter of law, for boys of seventeen to incur the risk of playing on the street. But there are no circumstances here to take the case out of the general rule that it is for the jury to determine under all the circumstances whether the use of the street by the boys was a legitimate use, and whether the danger was so apparent that they were guilty of contributory negligence.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and the cause be remanded to that Court for a new trial.