9957

### TRIPLETT v. CITY OF COULUMBIA.

(96 S. E. 675.)

1. CONSTITUTIONAL LAW—LEGISLATIVE POWER OF COURTS.—Courts are not invested with power to make laws.

2. MUNICIPAL CORPORATIONS—INJURIES TO PERSONS—STREETS—STAGNANT WATER.—Civ. Code 1912, sec. 3053, making city liable for bodily injury or damages to person or property through defect in street by reason of mismanagement, applies only to defects in streets for street purposes, but does not render city liable to property owner made ill by depression in street filled with stagnant water.

Before SMITH, J., Richland, Summer term, 1917. Affirmed.

Action by Vashti Triplett against the City of Columbia. Judgment for defendant, and plaintiff appeals.

Order of Circuit Court, sustaining demurrer to complaint:

Omitting the merely formal parts of the complaint, the plaintiff in this cause alleges, substantially, that for some time prior to the 1st day of June, 1916, the defendant, through the neglect and mismanagement of its agents and employees, permitted a large pool of stagnant water, "about twenty-five feet long by fifteen feet wide, and varying at different times from a foot to four feet in depth," containing "large quantities of trash, refuse and decaying matter," to remain in and upon Pulaski street, a public highway within the corporate limits of the said city of Columbia; that the plaintiff, "who resided near to the pool or puddle above referred to," without any negligence on her part or in any way negligently contributing thereto, "was caused to contract colitis on or about the 1st day of June, 1916, and was thereby made sick and ill, and to continue sick and ill for a long period of time, and be placed in danger of death, and to suffer great pain, misery, and discomfort," to her great damage, and that such injuries and damage were due to the

neglect and mismanagement of the defendant in the particulars mentioned.

The cause was heard by the Court on a motion to dismiss the complaint (section 198 of the Code of Civil Procedure), and the sole question presented therein for the determination of the Court is whether a municipal corporation is liable, under the provisions of section 3053 of the Civil Code 1912, for damages under the facts set forth in the complaint, which are admitted to be true for the purpose of this inquiry. *Tutt v. Railway,* 28 S. C. 397, 5 S. E. 831.

It is the settled law of this State that a municipal corporation vested with certain powers under the Constitution and laws of the State and chargeable with the duty of keeping the streets or public highways within its corporate limits in proper repair, is not liable in a civil action for damages for injuries to the person or property sustained in consequence of a violation of such duty, in the absence of a statute imposing such liability, and a substantial compliance with the requirements and conditions upon which such liability is predicated.

Such a liability, however, has been created in this State, under the conditions and limitations therein imposed, by a legislative enactment (21 Stat. 91) now appearing as section 3053 of the Code of 1912, and which is as follows:

"Any person who shall receive bodily injury, or damages in his person or property, through a defect in any street, causeway, bridge or public way, or by reason of defect or mismanagement of anything under control of the corporation within the limits of any town or city, may recover, in an action against the same, the amount of actual damages sustained by him by reason thereof. If any such defect in a street, causeway or bridge existed before such injury or damage occurred, such damage shall not be recovered by the person so injured if his load exceed the ordinary weight: *Provided,* The said corporation shall not be liable unless such defect was occasioned by its neglect or mismanagement:

*Provided; further,* Such person has not in any way brought about any such injury or damage by his or her own negligent act or negligently contributed thereto."

Construing the provisions of this act, and those of a similar act, establishing the liability of the county for injuries to the person and property for defects in the public highways and bridges under its control, the Court at an early period declared the ground upon which such liability rested. *Acker v. County of Anderson,* 20 S. C. 495; *Brown v. Laurens County,* 38 S. C. 282, 17 S. E. 21; *Mason v. County of Spartanburg,* 40 S. C. 390, 19 S. E. 15, 42 Am. St. Rep. 887; *Dunn v. Barnwell,* 43 S. C. 398; 21 S. E. 315, 49 Am. St. Rep. 843; *Barksdale v. Laurens,* 58 S. C. 413, 36 S. E. 661; *Hutchison v. Summerville,* 66 S. C. 448, 45 S. E. 8; *Bryant v. Orangeburg,* 70 S. C. 137, 49 S. E. 229. In the case of *Dunn v. Barnwell, supra,* Mr. Chief Justice McIver, delivering the opinion of the Court, in his usual clear and forceful statement, does not leave the slightest doubt that liability under this statute is limited solely to such injuries to the person and property as are due to "a defect in any street, causeway, bridge or public way," and that the terms "neglect" and "mismanagement" are therein used in connection with keeping the streets, etc., in proper repair. That such is the unmistakable conclusion of the Court, it is only necessary to refer to the language of the learned Chief Justice (43 S. C., at page 401, 21 S. E., at page 316, 49 Am. St. Rep. 843), as follows: "It is apparent from the title of this act, as well as from the terms used in the body of the act, that the sole purpose was to give a person who had sustained an injury by reason of a defect in a street a right of action to recover damages for such injury. The title of the act is as follows: 'An act providing for a right of action against a municipal corporation for damages sustained by reason of defects in the repair of streets, sidewalks and bridges, within the limits of said municipal corporation,' and it is manifest that the purpose thus declared in the title was

adhered to in the body of the act, especially from the language used in the proviso above set out, where it is declared that the corporation should not be liable, 'unless said defect was occasioned by its neglect or mismanagement;' indicating very clearly that the term 'mismanagement,' as used in a previous part of the act, meant mismanagement in making repairs on the streets, so that the corporation should be held liable not only for neglect in making the repairs on the streets, but also for mismanagement of anything under the control of the corporation in making such repairs.    There is nothing whatever in the act indicating an intention on the part of the legislature to make a municipal corporation liable for any other nonfeasance or misfeasance on its part, except such as was connected with the keeping of the streets, etc., in proper and safe repair."

This doctrine, without the slightest qualification, was recognized and applied in several of the subsequent cases (*Barksdale v. Laurens, supra; Hutchison v. Summerville, supra; Bryant v. Orangeburg, supra*), and not until the decision of the Court in the case of *Irvine v. Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363, could any question with regard to a modification thereof have been suggested with any degree of plausibility. And it is plain to the Court that an examination of the latter case will disclose no intention of the Court whatever to abandon the basis of liability so strongly stated in the case of *Dunn v. Barnwell,* but merely to define, more clearly and definitely, as was made necessary by the facts of that case, the motive and extent of the duty imposed "to keep a street in repair," for the violation of which the act established liability.    This distinction is clearly recognized and stated by Mr. Justice Woods in an exceedingly able and elaborate opinion in the use of the following language (89 S. C., at pages 519, 520, 72 S. E. 228, 231, 36 L. R. A. (N. S.) 363:

"In the case of *Dunn v. Barnwell,* 43 S. C. 398, 21 S. E. 315 (49 Am. St. Rep. 843), the Court, construing the statute

in the light of its title, held that the liability created by it was limited to misfeasance or nonfeasance connected with the keeping 'of any street, causeway, bridge or public way' in proper repair. The construction has been followed in cases arising since the statute was incorporated in the Civil Code. *Hutchison v. Summerville,* 66 S. C. 448, 45 S. E. 8; *Bryant v. Orangeburg,* 70 S. C. 142, 49 S. E. 229."

"But we are unable to give the duty of keeping streets in repair the narrow meaning contended for by respondents. To keep a street in repair means to keep it in such physical condition that it will be reasonably safe for street purposes. It is not enough that its surface should be safe. A street is not in repair when poles or wires or other structures are so placed in or over it as to be dangerous to those making a proper use of the street. In *Duncan v. Greenville,* 71 S. C. 170, 50 S. E. 675, it was held that a wagon left on the public road so as to put travelers in peril must be regarded, under the statute, as a failure to keep the road in repair. In this case the pole was placed in the street as a fixture and became a part of the street, which it became the duty of the municipal authorities to keep safe."

Applying the principle thus declared, the defendant was held liable under the act for an injury to the plaintiff, a boy 17 years of age, caused by coming in contact with a chain hanging by the side of an electric light pole which conveyed a fatal charge of electricity.

In the case of *Stone v. City of Florence,* 94 S. C. 375, 78 S. E. 23, the defendant was held liable under the statute for an injury to a child of tender years by falling into an unguarded ditch, in which the defendant had burnt some trash and had left a smouldering fire, regardless of whether the ditch was *in* the street or on the extreme edge thereof. The most casual consideration of this case obviously sustains the rule declared in the case of *Irvine v. Greenwood.* In stating the conclusions of the Court, Mr. Justice Hydrick, 94 S. C., at pages 377, 378, 78 S. E., at pages 22, 24, says: "In *Irvine*

*v. Greenwood,* 89 S. C. 511 (72 S. E. 228, 36 L. R. A. (N. S.) 363), the neglect or mismanagement complained of consisted in leaving an electric light pole in the street from which an iron chain connected with the wire hung so low that plaintiff caught it and received a deadly charge of electricity. It was argued for the city that this was not such a defect in the repair of the street as was contemplated by the statute. In rejecting that contention, the Court said: 'But we are unable to give the duty of keeping streets in repair the narrow meaning contended for by respondents. To keep a street in repair means to keep it in such physical condition that it will be reasonably safe for street purposes. It is not enough that its surface should be safe; a street is not in repair when poles or wires or other structures are so placed in or over it as to be dangerous to those making a proper use of the street. In *Duncan v. Greenville,* 71 S. C. 170, 50 S. E. 675, it was held that a wagon left on the public road so as to put travelers in peril must be regarded under the statute as a failure to keep the road in repair. In this case the pole was placed in the street as a fixture and became a part of the street, which it became the duty of the municipal authorities to keep safe.' In *Hutchison v. Summerville,* 66 S. C. 442, 45 S. E. 8, this Court held that the corporation was liable for an injury to plaintiff resulting from negligence in leaving a ditch at the end of a sidewalk unguarded, so that plaintiff fell into it. Hence, if a ditch or drain along the edge of a street or highway is negligently left unguarded, and a person lawfully using the highway is injured thereby, the corporation is liable. It is not material, therefore, whether the ditch into which the plaintiff fell was wholly within the street, or merely along the extreme eastern edge of it; for, in either case, defendant is liable if, under all the circumstances, it was negligence to leave it unguarded. Negligence in the repair of a street may consist in omission or nonaction."

The application of the doctrine declared in the case of *Irvine v. Greenwood, supra,* and distinctly recognized in the case of *Stone v. City of Florence, supra,* quite naturally and logically led to the enforcement of liability against a municipality for an injury caused by being carelessly and negligently run over on a public street by a fire engine under the control of its employees (*Creps v. City of Columbia,* 104 S. C. 371, 89 S. E. 316), and by an automobile negligently operated upon its streets while engaged in a speed contest with its knowledge and consent. *Burnett v. City of Greenville,* 106 S. C. 255, 91 S. E. 203; *Sexton v. City of Rock Hill,* 107 S. C. 505, 93 S. E. 180. In the latter cases the Court strictly adhered to the doctrine that the acts complained of rendered the street unsafe for street purposes, and liability was, therefore, ultimately based upon the ground stated in the case of *Irvine v. Greenwood.*

A careful examination of the cases will show beyond controversy that, in every instance in which it has been sought to hold a municipality liable for personal injuries under the statute, its liability has been limited to some act of nonfeasance or misfeasance connected with a failure to keep its "streets, etc., in proper and safe repair" (*Dunn v. Barnwell, supra*); or, to put it in different language, for some act of omission or commission which rendered the streets, etc., not "reasonably safe" for "prime street purposes" (*Burnett v. City of Greenville, supra*); that a discharge of the duty to keep "in proper and safe repair" imposes the duty to keep "reasonably safe" for "prime street purposes," and that the plaintiff in such cases sustained a "bodily" injury as the direct and proximate result of the delict while engaged in the use of the street for legitimate purposes. The case of *Irvine v. Greenwood, supra,* is not in conflict with the latter view as the Court in that case expressly refused to sanction the doctrine (89 S. C., p. 522, 72 S. E. 232, 36 L. R. A. (N. S.) 363), "that playing by boys and girls while they are still of the age of youthful sportiveness is an *illegitimate*

use of a street, not to be anticipated by the authorities whose duty it is to keep highways in a reasonably safe condition." (Italics added.)

Naturally, the next inquiry is to determine whether the requirements of the statute as determined by the cases have been fully met in the allegation of this complaint.

It will be observed that there is no allegation which either directly or inferentially charges that the "pool or puddle" of water rendered the street unsafe for "street purposes." There is no allegation that the plaintiff sustained any "bodily injury" as the direct and proximate cause thereof, while engaged in the use of the street for a legitimate purpose. On the contrary, the allegation setting forth the character of the injury complained of—the contraction of disease— and that the plaintiff "resided near to the pool or puddle," would clearly indicate that the only unsafety alleged was to the health of one who "resided near," and, as a matter of fact, may never have used the street at all, rather than an allegation of "bodily injury" to one while engaged in the legitimate use thereof.

The Court is clearly of the opinion that it was never the purpose of the legislature to extend the liability of a municipal corporation to a case of this nature.

*Messrs. W. Boyd Evans* and *Alfred Wallace, Jr.,* for appellant, submit: *That the facts stated in the complaint constitute, under the provisions of section 3053 of the Civil Code of 1912, a cause of action against the city of Columbia for damages:* Civil Code of 1912, sec. 3053; 36 S. E. 561; 88 S. E. 469; 77 S. C. 281; 57 S. E. 857; McQuillian on Municipal Corporations (6th Ed.), sec. 2604, sec. 2610, subdiv. 1, note 25, also sec. 2622; 20 S. C. 213; 21 S. E. 540; 96 S. C. 24; 79 S. E. 630; 89 S. C. 511; 72 S. E. 228; Civil Code 1912, vol. I, sec. 3053; 54 S. C. —; 32 S. C. 388; 40 S. C. 327; 24 S. E. 337; 88 S. E. 464; 71 S. E. 449; 13 Pick (Mass.) 130; 23 Am. Dec. 662.

*City Attorney, C. S. Monteith,* for respondent, submits:
*The case at bar is different from that of Mayrant v. City of
Columbia,* 77 S. C. 281. *The complaint alleges a public
nuisance. This being true, if the action were against a pri-
vate citizen or corporation, it could not be maintained:* 102
S. C. 442. *If a city were to fill an excavation in the high-
way with rubbish and refuse matter, and thereby create a
nuisance, it might be liable for injury to adjacent property,
but it would not be liable for sickness among the occupants
thereof:* 162 N. C. 469; L. R. A. 1915c, 751; 150 N. C.
718; 22 L. R. A. (N. S.) 940.

April 17, 1918.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

We are satisfied with the reasoning upon which the Circuit
Court reached the conclusion that this action cannot be
maintained under section 3053, Civil Code 1912; and we
would not attempt to add anything to the opinion of the
learned Judge on that point, but for the contention of appel-
lant that this action falls within the principle upon which
this Court rested its decision in the case of *Mayrant v.
Columbia,* 77 S. C. 281, 57 S. E. 857, 10 L. R. A. (N. S.)
1094. That case seems to have been overlooked by the Cir-
cuit Court. At any rate, it was not referred to in the
opinion.

Only by a strained process of reasoning can it be said that
this case is not within the ground upon which the decision
in the Mayrant case was rested. Nevertheless, it does not
follow that the decision of the Circuit Court in this case
was wrong; for, though the decision in the Mayrant case
was right, it was not put upon the right ground. In the
Mayrant case the wrong was alleged to have been caused by
negligence in raising the level of the street, closing up the
existing surface drains, and so negligently installing drain
pipes of insufficient size and fall to carry off the surface

water (which had theretofore been carried off by the sur-face drains) that it was thrown and ponded upon plaintiff's lot. In this case, the negligence alleged consists in failing to drain the surface water off the street, and thereby allow-ing a cesspool to be created and remain in the street which caused plaintiff's sickness. In neither case was the injury caused by any defect in the street which interfered with or affected the use of it for legitimate street purposes, so as to bring it within the ground of decision in *Hutchison v. Sum-merville,* 66 S. C. 448, 45 S. E. 8; *Duncan v. Greenville,* 71 S. C. 170, 50 S. E. 776; *Irvine v. Greenwood,* 72 S. E. 228; .*Stone v. Florence,* 78 S. E. 23; *Creps v. Columbia,* 104 S. C. 372, 89 S. E. 316; *Burnett v. Greenville,* 91 S. E. 203, and *Sexton v. Rock-Hill,* 93 S. E. 180; nor was it caused by mis-management of something under the control of the corpora-tion while being used in the work of repairing the streets, so as to bring it within the ground of decision in *Barksdale v. Laurens* (the steam roller case), 58 S. C. 413, 36 S. E. 661, or *Strait v. Rock Hill,* 104 S. C. 116, 88 S. E. 469 (the rock crusher case).

The case of Mayrant stands alone. It cannot be brought within the ground of decision of any of our previous cases, in all of which the right to bring the actions was held to be given by the statute, as it was interpreted in *Dunn v. Barn-well,* 43 S. C. 401, 21 S. E. 315, 49 Am. St. Rep. 843, an interpretation which has been expressly recognized and fol-lowed in every subsequent decision except the Mayrant case. By reference to the opinion of the late Chief Justice Pope in the Mayrant case, it will be seen that he does not attempt to show that it falls within the statute, as interpreted in *Dunn v. Barnwell,* 43 S. C. 401, 21 S. E. 315, 49 Am. St. Rep. 843, or any previous decision of this Court. On the con-trary, he relies entirely upon the authority of text-writers and decisions of other Courts.

Now the rule of decision in this Court is exceptional with regard to actions against municipal corporations for tort in

at least two important particulars, both of which seem to
have been overlooked by the learned Chief Justice, as will
clearly appear from a consideration of the quotations found
in his opinions.   In the first place, the Courts of most other
States hold that such corporations are liable under the com-
mon law for certain kinds of torts, while this Court has
uniformly denied such liability, and held that no action for
tort can be maintained against them unless it is expressly
authorized by statute; the reason being that in the perform-
ance of their functions they are mere agencies of the State
for governmental purposes, and the State cannot be sued
without its consent.   In the second place, the Courts of most
other States recognize a distinction between what are called
governmental, and corporate or ministerial, functions in
such corporations, while this Court has expressly rejected
that distinction, and held that all the powers conferred upon
such corporations are to be exercised as governmental pow-
ers.   *Irvine v. Greenwood*, 89 S. C. 511, 72 S. E. 228, 36 L.
R. A. (N. S.) 363.   Therefore, if we follow our previous
decisions construing section 3053, the conclusion is inevitable
that the decision in the Mayrant case was rested upon an
untenable ground.   It might have been rested upon the
authority of the act of 1902, entitled "An act to require
municipalities to provide drains for surface water."   23
Stat. 1038.   That act is quoted in the opinion as section
2010a of the Civil Code of 1902, though it does not appear
in the body of that Code, but now appears as section 3026
of the Civil Code of 1912.   The decision might also have
been rested upon the principal upon which the decision of
this Court in *Hopkins v. Clemson College*, 77 S. C. 12, 57
S. E. 551, was reversed by the Supreme Court of the United
States, 221 U. S. 636, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L.
R. A. (N. S.) 243, in which liability was imposed on the
ground that the diversion of the waters of Seneca River

2—111

upon the plaintiff's land was tantamount to a taking thereof without compensation. See the consideration of that ground in *Irvine v. Greenwood*.

Where an individual has suffered injury as the result of a wrong done, natural justice calls for some remedy, and the Courts have ever been alert to provide one; hence the boast of the law, which is often pressed upon the attention of Courts, that for every wrong there is a remedy. But there is another axiom of practical wisdom equally important to be observed—hard cases make bad laws. Not infrequently the hardship of a particular case leads to the strained, if not incorrect, application of sound principles to fit the facts, so as to afford a remedey; and, when the same principles are invoked in similar cases, it is discovered that they lead to results that are exceedingly inconvenient, if not so illogical that they cannot be justified on settled principles of legal liability. And the consequence is that the previous decision must be distinguished, modified or overruled.

The Courts are not invested with the power to make laws. They should and do keep pace with the progress and development of society by the application of settled principles to new relations and conditions, but in doing this the point is sometimes reached when the power of the Court ends and the duty of the legislator begins.

If the plaintiff, who has been injured by disease, superinduced by the negligence of defendant, can maintain her action for damages, why may not every other member of the family, or of the community, or, indeed, of the entirel city, who has suffered a like injury from a like cause, maintain such an action? The fact that the exciting cause of the disease was in a street, and the result of negligence in failing to keep it in proper repair, is an immaterial incident. The consequences would have been the same if the nuisance has been created or allowed to exist

on a private lot   Upon what principle could the Court justify the allowance of the action in one case and deny it in the other?

A moment's reflection will disclose innumerable evils that would result from the allowance of such an action.   Municipalities, the agencies of government, would become liable for epidemics of typhoid fever and other diseases caused, actually or supposedly, by negligence in water supplied to the people, the disposition of sewage and refuse matter, and on other grounds which will readily be suggested.   The floodgates of litigation would be thrown wide open, and the funds that are raised by taxation for public improvements would be dissipated in tort suits.   Such liability could not be sustained under the principles of the common law; and it is perfectly clear that it was never contemplated by the legislature in the enactment of section 3053.

Judgment affirmed.

MESSRS. JUSTICES WATTS, FRASER and GAGE concur.

MR. CHIEF JUSTICE GARY did not sit in this case.