## 10501

### HAITHCOCK v. CITY OF COLUMBIA.

#### (104 S. E. 335.)

1. MUNICIPAL CORPORATIONS—WHETHER CITY IS NEGLIGENT AS TO PART OF PARK MUST BE CONSIDERED WITH REFERENCE TO WHOLE.—The street sidewalks, grassplots, etc., in a park are merely its component parts, and to determine whether the municipality is negligent in maintaining them its conduct must be considered with reference to the entire park and not merely in connection with the particular street.

2. MUNICIPAL CORPORATIONS—TENDER AGE OF CHILD INJURED IN PARK MUST BE CONSIDERED IN DETERMINING CITY'S NEGLIGENCE.—In determining whether there was testimony tending to show negligence on the part of defendant city in the maintenance of a park, the tender age of plaintiff, a child injured through explosion of dynamite caps found by him in the park, must be considered.

3.. MUNICIPAL CORPORATIONS—WHETHER CITY OR CHILD, INJURED BY
   DYNAMITE CAPS FOUND IN PARK, WAS NEGLIGENT A JURY QUESTION.
   —Whether defendant city was negligent in maintaining on its prem-
   ises a dangerous instrumentality calculated to attract the youthful
   instincts of plaintiff, a child, injured by the explosion of dynamite
   caps which he found within the city's park, and whether the child
   was guilty of negligence contributing to his injury, *held* questions of
   fact for the jury.

Before MOORE, J., Richland, Fall term, 1919.    Reversed.
Action by W. F. Haithcock, Jr., by his guardian *ad litem,*
W. F. Haithcock, Sr., against City of Columbia, for per-
sonal injuries.    From order of nonsuit, the plaintiff appeals.

*Messrs. E. J. Best* and *E. W. Mullins,* for appellant, cite:
*Not necessary to establish negligence of defendant by posi-
tive testimony:* 95 S. C. 347; 98 S. C. 382; 105 S. C. 235;
14 Rich. 237.    *Duty, and degree of caution necessary in
handling explosives particularly where children are exposed:*
167 N. C. 580; 83 S. E. 826.    *Infant plaintiff of 11 years
incapable of contributory negligence:* 94 S. C. 375; 76 S. C.
539.    *Liability of municipality for failure or neglect to keep
streets in repair:* 1 Civ. Code 1912; 111 S. C. 7; 96 S. E.
675.    *Statute must be given a reasonable construction:* 89
S. C. 511.    *Liability for defect outside of traveled part of
highway or street:* 92 Iowa 172; 60 N. W. 519.    *Defect, on
private property, adjoining highway, may render use of
way itself unsafe:* 111 U. S. 236; 3 Allen 402.

*Mr. C. S. Monteith,* for respondent, cites: *Testimony of
infant plaintiff overthrows any presumption of incapacity:*
76 S. C. 539.    *Action could not be maintained against city:*
111 S. C. 7; 96 S. E. 675.

October 11, 1920.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

This is an action for damages, alleged to have been sustained by the plaintiff through the wrongful acts of the defendant. The appeal is from an order of nonsuit in favor of both defendants, but the defendant, Hardaway Contracting Company, was not included in the notice of appeal.

The complaint alleges:

"That on or about the 24th day of February, 1919, and long prior thereto, the defendant, City of Columbia, maintained a public playground at Erwin Park, and public ways and streets into and about said park, in close proximity to its water plant, for the purpose of furnishing recreation and diversion for the children of Columbia; and said children had used said premises and park, and public ways and streets therein, and the property contiguous thereto, for a long time prior to February 23, 1919, with the knowledge, acquiescence and approval of the city of Columbia."

The park is more particularly described by one of plaintiff's witnesses, who thus testified:

"Erwin Park is a public park for the city of Columbia and the city maintains roads and streets around through the park, and also grassplots therein; and the public use said streets, sidewalks, and public driveways without objection. The city has a pumping station—a one-story building, containing two steam pumps—used in the operation of the city's waterworks plant. There is a sidewalk or street passing parallel with and along the side of these buildings. Some time in December it became necessary for the city to dig an excavation for the purpose of placing a pipe in the waterworks building at the park. In carrying on this work the city used dynamite and dynamite caps for blasting. These dynamite caps were nearly an inch long, and about the size of a thirty-penny nail."

The plaintiff thus testified:

"I will be 12 years old the 18th of January next. My brother and I went down to Erwin Park. I saw some of those dynamite caps down there, and I went over and picked

up one. The caps were upon a window sill, about 25 or 30 of them. The window sill was about 2 feet high. We stopped in the park to play. The window where I found the caps was on the waterworks building. At the side of the building, and a few feet away, there is a walk. Between there and the building there was no grass growing at this time. I think grass grows there in the summer. I had never seen one before. I took one cap and went up to a rock seat on the hill, about 30 feet away. After I got up there, I hit the cap with a rock. It exploded and blew off my thumb and two fingers."

Cross-examination: "I found most of the dynamite caps in a paper sack, on the window ledge, but the paper sack was torn, and three of the caps were lying on the ground. I went off the sidewalk and up the bank to the window sill, to get the caps."

At the close of the plaintiff's testimony, the defendants made a motion for a nonsuit on the following grounds:

"There is absolutely no evidence to show that the walkways or public ways were not perfectly safe, and the proof of the plaintiff shows that he went some 17 or 18 feet away from a sidewalk, and picked up a dynamite cap on the window sill of the building."

His Honor, the presiding Judge, assigned the following reasons, in granting the nonsuit:

"I do not think, under the showing here, that the whole park could be held as a public way, because that, it seems to me, would be broadening the statute very much, but certainly a public way would have to be limited to such part, it seems to me, as was mantained by the city for the purpose of visiting the park. And when you get to 17 or 18 feet away, I do not think it comes within the Stone case, or any of these other cases that have been cited. If the place was 17 or 18 feet away, it seems to me that is sufficient space to show that it doesn't come within a defect in the street or public way, unless you hold the whole park to be a public

way. There is nothing to show there was anything nearer to the place where this occurred, maintained by the city as a public way, than this walkway 17 or 18 feet away."

The plaintiff appealed upon exceptions which will be reported.

Before proceeding to consider the questions at issue, it may be well to show the policy of the State in regard to playgrounds and parks. In *Irvine v. Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363, the mismanagement of the municipality consisted in leaving an electric light pole in the street, from which a metallic chain connected with the wire hung so low that it was caught by the plaintiff, who was killed by the electric current.

The injury did not take place in a regular park, but in a street which was being used by the children engaged in the game, as a temporary playground; yet the Court used this language:

"There can be no doubt that the main purpose of streets and roads is for travel. They serve this purpose, not only as avenues of traffic and of social communication, but as a means for the people to obtain, at will, the pleasurable sensation of locomotion and change of scene and environment. * * * Children and youths have always used streets for their sports, subject to the regulation of municipal ordinance, and subject to the use of the streets for the other purposes above set out. To vast numbers of boys and girls the street affords the only place of sport, and the only outlook from a pent-up home. The interest of the State is no less vital that these boys and girls should have a place for development of body and spirit by out-of-door sport, than its interest that they should have the public school as a place for mental training. Indeed, it is not to be doubted that arrested and abnormal development of men and women, which results in the great burden of crime borne by society, is due largely to the lack of park and playgrounds, where the joy of activity in the fresh air may be found."

3—S. C. 115.

Section 3053 of the Code of Laws is as follows:

"Any person who shall receive bodily injury, or damages in his person or property, through a defect in any street, causeway, bridge or public way, or by reason of defect or mismanagement of anything under control of the corporation within the limits of any town or city, may recover, in an action against the same, the amounts of actual damages sustained by him by reason thereof: * * * *Provided,* The said corporation shall not be liable unless such defect was occasioned by its neglect or mismanagement: *Provided, further,* Such person has not in any way brought about any such injury or damage by his or her own negligent act or negligently contributed thereto."

The action was brought under this statute.

The cases of *Irvine v. Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363, and *Stone v. Florence,* 94 S. C. 375, 78 S. E. 23, are conclusive of the proposition, that public playgrounds and parks come within the provisions of said section; and that it is the duty of a municipality to keep them reasonably safe, in order that they may serve their intended purpose. In the case of *Irvine v. Greenwood, supra,* this Court said:

"We are unable to give the duty of keeping streets in repair the narrow meaning contended for by respondents. To keep a street in repair means to keep it in such physical condition that it will be reasonably safe for street purposes."

The same principle applies to a park; it must be kept reasonably safe for park purposes.

The streets, sidewalks, grassplots, etc., in a park, are merely its compotent parts; and, in order to determine whether the municipality is guilty of negligence, its conduct must be considered with reference to the entire park, and not merely in connection with a particular street. The grassplot over which the plaintiff crossed, to get

the caps, was as much a part of the park as the street he was then using.

As the ruling of his Honor, the presiding Judge, was contrary to this principle, it was erroneous. In determining the question, whether there was testimony tending to show negligence on the part of the city of Columbia, the tender age of the plaintiff must be taken into consideration. There was testimony to the effect that the plaintiff saw the caps on the window sill, about 18 feet from the sidewalk where he was walking; that he did not go beyond the limits of the park, in order to ge the caps.

Whether there was negligence on the part of the city of Columbia in maintaining on its premises a dangerous instrumentality, calculated to attract the youthful instincts of the plaintiff, and whether he was guilty of negligence that contributed to his injury, were questions for the jury. *Franks v. So. Cotton Oil Co.* 78 S. C. 10, 58 S. E. 960, 12 L. R. A. (N. S.) 468; *Sexton v. Noll Construction Co.,* 108 S. C. 516, 95 S. E. 129; *McLendon v. Hampton Cotton Mills,* 109 S. C. 238, 95 S. E. 781.

Reversed.