10752

FAUST v. RICHLAND COUNTY

KELLY v. RICHLAND COUNTY

(109 S.E. 151)

EMINENT DOMAIN—HIGHWAYS—COMPLAINT HELD TO STATE CAUSE OF
ACTION FOR DAMAGES AGAINST COUNTY AND FOR TAKING OF
PRIVATE PROPERTY FOR PUBLIC USE.—Complaint in action against
county, alleging that defendant in repairing highway filled ditch
and diverted water on plaintiff's premises, to his damage, *held*
to set forth a cause of action for damages against the county
and a good cause of action for the recovery of compensation for
taking of private property for public use, under Const. Art. 1, § 17.

Before WHALEY, J.,   County Court.   Affirmed.

Actions by J. H. Faust and Ben L. Kelly against Rich-
land County.   From an order overruling demurrer to the
complaints the defendant appeals.

The complaint in substance alleged: that plaintiff is the owner of three acres and a dwelling on the right hand side of the Two Notch Road on the side of a hill which slopes toward the east so that the drainage from a considerable area to the west flows over plaintiff's property, first flowing under the highway. That prior to the repairs on the highway there was on each side thereof in front of plaintiff's dwelling a drainage ditch which conveyed the rain water from lands in that immediate vicinity to another ditch intersecting said highway at right angles which passes through and over plaintiff's premises by means of which the water was conveyed away without injury to plaintiff's premises. That defendant while making repairs to said highway carelessly and negligently and in utter disregard of rights of plaintiff, filled in the drainage ditches along the side of the road in front of plaintiff's house and elevated the road bed so as to cause the rain which falls upon the roads and lots adjacent thereto to accumulate in great volume and flow with great force across plaintiff's yard and under his house and through his premises thereby damaging said premises.

That defendant by elevating the road bed has built a dam which prevents the natural flow of rain water that accumulates on lands adjacent to plaintiff's premises, ponds the same in front of plaintiff's premises in great volume, and from which it flows in great volume and with great force through a ditch and culvert leading through said highway and through plaintiff's premises in great and unnatural volume, to his damage.

The defendant demurred on the grounds that it appears upon the face of the complaint herein.

1. That under the act referred to in said complaint and under which this cause of action is alleged to be brought, there is not allowed to any person a recovery for injury or

damage under the facts and circumstances alleged in said complaint.

2. There is no allegation of any injury or damage caused by any defect or in the negligent repair of said highway which interfered with or affected its use for legitimate highway purposes.

The order of Judge M. S. Whaley, overruling the Demurrer, omitting the formal portions; and the statement of facts, which is incorporated in the dissenting opinion, was as follows:

The complaint concerns surface water only. *Lawton v. Ry.*, 39 S. E., 752. There being no allegation of any prescriptive right or facts from which such a right might be inferred, the plaintiff has no right of action from that source. Id., 754.

In ascertaining what are the rights of the parties in the instant case, one must keep in mind that under the common law doctrine, which exists in this State, "there is a manifest distinction between casting water upon another's land and preventing the flow of surface water upon your own." *Brandenburg v. Zeigler*, 32 S. C., 18; 39 S. E., 790; *Cain v. Ry.*, 39 S. E., 792. In the former case it was held actionable for the owner of land to drain surface water by a ditch onto the lands of a lower proprietor. The Court therein called attention to the other class of cases in this State, among which were *Lawton v. Ry.*, 62 S. C.; 39 S. E., 752, and *Baltzeger v. Ry.*, 54 S. C. 245; 32 S. E., 385; 71 Am. St. Rep., 789, which hold that the lower proprietor has the right to protect by embankment his property from surface water ravages, even if in so doing "he throws it back upon a coterminous proprietor to his damage. . . ."

We are now dealing with a case of the latter class. That last cited is conclusive of the issue here against the plaintiff, unless under Section 3053 of the Code of 1912, there was

created a right in plaintiff's favor, irrespective of the common law. In all cases above referred to negligence was not an essential element. *Touchberry v. Ry.,* 69 S. E., 877. Under Section 1972 of the Code, which is substantially the same as Section 3053, *School District v. Marion County,* 114 S. C., 382, except for several provisions which can not affect this issue, a defect in a highway resulting from negligence or mismanagement, or the negligent repair of a highway, when injury ensues, gives rise to a cause of action, regardless of what might or might not have been other theories of remedial relief under the common law. To that extent these two sections may give relief where at common law there was none.

In the case of *Columbia v. Melton,* 85 S. C., 558; 67 S. E., 902 (see 62 S. E., 248), where surface water was in question, and the facts of which were very similar to those here, Mr. Justice Woods clearly pointed out that "if the injury to the defendant's land was due to the negligence or mismanagement" of the plaintiff, "the defendant has a right of action under Section 2023 (now 3053) of the Civil Code——," quoting same. That case is conclusive of plaintiff's right to relief. See also *Scott v. Richland County,* 83 S. C., 506; *School District v. Marion County, supra.*

*Mr. W. C. McLain,* for appellant, cites: *Demurrer should have been sustained:* 111 S: C. 7. *Legislature by Sec.* 1972, 1 *Civ. Code* 1912, *did not mean to fix a liability for a county exceeding in scope the liability of an individual under the same facts and circumstances:* 20 S. C. 495; 40 S. C. 390; 111 S. C. 7.

*Messrs. Jas. H. Verner* and *Jas. H. Hammond,* for respondents. Oral argument.

· November 11, 1921.

The opinion of the Court *en banc* was delivered by MR. CHIEF JUSTICE GARY.

The only question properly and specifically raised is by the second exception. The cases of *Lawton v. Railway,* 61 S. C. 548, 39 S. E. 752, *Brandenberg v. Zeigler,* 62 S. C. 18, 39 S. E. 790, 55 L. R. A. 414, 89 Am. St. Rep. 887, *Cain v. Railway,* 62 S. C. 25, and *Hopkins v. Clemson College,* 221 U. S. 636, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243, clearly show that if an individual, instead of the defendant, had flooded the lands of the plaintiff in the manner alleged in paragraph 6 of the complaint, he would have subjected himself to an action for damages.

But there is even a stronger reason why the demurrer was properly overruled, to wit: The overflowing of. the plaintiff's lands in the manner alleged in the complaint was in violation of the constitutional provisions prohibiting the taking of property without due process of law, and likewise without just compensation· being first made.

In *Hopkins v. Clemson College,* 221 U. S. 636, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243, the plaintiff sued the defendant for damages to his farm resulting from the college having built a dyke, which forced the waters of·the Seneca River across his land, whereby the soil was washed away and the land rendered unfit for agricultural purposes.

The Supreme Court of the State dismissed the complaint, on the ground that the State was a necessary party, and had not consented to be sued. Thereupon the plaintiff sued out a writ of error to the United States Supreme Court. In that case the United States Supreme Court said: *

"Neither a State nor an individual can confer upon an agent authority to commit a tort, so as to excuse the perpetrator. In such cases the law of agency has no application—the wrongdoer is treated as a principal and individually liable for the damages inflicted and subject to injunc-

tion against the commission of acts causing irreparable injury. * * *

"Neither public corporations nor political subdivisions are clothed with that immunity from suit which belongs to the State alone by virture if its sovereignty. In *Lincoln County v. Luning,* 133 U. S. 520, 530, the Court said that: 'While the county is territorially a part of the State, yet politically it is also a corporation, created by and with such powers as are given to it by the State. In this respect it is a part of the State only in that remote sense in which any city, town, or other municipal corporation may be said to be a part.' The Court there held that the Eleventh Amendment was limited to those cases in which the State is the real party, or party on the record, but that counties were corporations which might be sued. * * * Undoubtedly counties, cities, townships, and similar bodies politic often, have a defense which relieves them from responsibility where a private corporation would be liable. But they must at least make that defense. They cannot rely upon freedom from accountability, as could a State. * * * If the State had in so many words granted the college authority to take or damage the plaintiff's property, for its corporate advantage without compensation, the Constitution would have substituted liability for the attempted exemption. But the State of South Carolina passed no such Act, and attempted to grant no such immunity from suit, as is claimed by the college. * * *

"But an examination of the cases cited, in any respect similar to this, will show that they involve questions of liability in a suit, rather than immunity from suit. Most of them were actions for torts committed, not by the public corporation itself, but the officers of the law. * * * * * * That general rule is of force in South Carolina, as appears from *Gibbs v. Beaufort,* 20 S. C. 213, 218, cited

in the opinion of the Court below, where it was said that a municipal corporation, instituted for the purpose of assisting the State in the conduct of local civil government, is not liable to be sued in an action of tort for nonfeasance or misfeasance of its officers, in regard to their public duties, unless expressly made so by statute.' But the plaintiff is not seeking here to hold the college liable for nonfeasance or misfeasance either of its own officers or officers of the public. This is a suit against the college itself for its own corporate act in building a dyke, whereby the channel had been narrowed, the swift current had been diverted from the usual course across the plaintiff's farm, and, as is alleged, destroying the banks, washing away the soil, and for all practical purposes as effectually depriving him of his property as if there had been a physical taking. * . .* * "For protecting the bottom land, the college, for its own corporate purpose and advantages, constructed the dyke. In so doing it was not acting in any governmental capacity. The embankment was, in law similar to one which might have been built for private purposes by the plaintiff on the other side of the river. If he had there constructed a dyke to protect his farm, and in so doing had taken or damaged the land of the college, he would have been sued and held liable. In the same way and on similar principles of justice and legal liability, the college is responsible to him if, for its own benefit and for protecting land which it held and used, it built a dyke which resulted in taking or damaging the plaintiff's farm. * * * These suggestions, though made in a plea to the jurisdiction, afford no reason' why the college should be granted immunity from suit, when it is claimed that, in violation of the Constitution, it has taken private property for its corporate purposes without compensation. * * * And if the facts hereafter warrant it, the college may be en-

joined against further acts looking to the maintenance or reconstruction of the dyke."

The judgment of the State Court was reversed. We have quoted somewhat at length from the case of *Hopkins v. Clemson College,* supra, for the reason that its authority is binding upon the Courts of the several States; and it is contended that our decisions are in irreconcilable conflict.

In the cases of *Irvine v. Greenwood,* 89 S. C. 511; 72 S. E. 228, 36 L. R. A. ( N. S. ) 363, and *Triplett v. Columbia,* 111 S. C. 7, 96 S. E. 675, 1 A. L. R. 349, this Court has cited the Hopkins Case with approval.

The facts in the Triplett Case alleged by the plaintiff were, in substance, as follows: That the defendant, through its negligence and mismanagement, permitted a large pool of stagnant water, containing large quantities of decaying matter, to remain upon one of the streets of Columbia; that the plaintiff, who resided near the said pool, was caused to contract colitis, whereby she was made sick, to her damage in an alleged amount mentioned in her complaint.

A motion was made to dismiss the complaint, and the sole question was whether the municipality was liable under Section 3053 of the Code of Laws 1912. The Circuit Court ruled that she was not, and dismissed the complaint. On appeal to the Supreme Court the judgment of the Circuit Court was affirmed. In delivering the opinion of the Supreme Court, Mr. Justice Hydrick reviewed the decision in the case of *Mayrant v. Columbia,* 77 S. C. 281, 57 S. E. 857, 10 L. R. A. (N. S.) 1094, saying:

"Though the decision in the Mayrant Case was right, it was not put upon the right ground. In the Mayrant Case the wrong was alleged to have been caused by negligence in raising the level of the street, closing up the existing surface drains, and so negligently installing drain pipes of insufficient size and fall to carry off the surface

water (which had theretofore been carried off by the sur-face drains) that it was thrown and ponded upon plaintiff's lot. * * * If we follow our previous decisions construing Section 3053, the conclusion is inevitable that the decision in the Mayrant Case was rested upon an untenable ground. It might have been rested upon * * * Section 3026 of the Civil Code of 1912. The decision might have also been rested upon the principle upon which the decision of this Court in *Hopkins v. Clemson College*, 77 S. C. 12, was reversed by the Supreme Court of the United States (221 U. S. 636), in which liability was imposed on the ground that the diversion of the waters of Seneca River upon the plaintiff's land was tantamount to a taking thereof without compensation."

He then refers to the consideration of that ground in *Irvine v. Greenwood,* supra. Turning to that case, we find that Mr. Justice Woods, who delivered the opinion of the Court, used this language:

"In *Hopkins v. Clemson College,* 77 S. C. 12, 57 S. E. 853 the question was whether Clemson College, a corporation created for a public purpose, was liable for overflowing plaintiff's land in constructing a dyke to protect the crops on the college lands from the floods in the Seneca River This Court held that the case fell within the rule laid down in *Gibbes v. Beaufort,* 20 S. C. 213, *Dunn v. Barnwell,* 43 S. C. 398, 21 S. E. 315, and the other cases decided in this State cited above, and that therefore the plaintiff could not recover. On appeal the Supreme Court of the United States reversed the judgment of this Court holding that the flooding of plaintiff's land was the taking of private property without due process of law, and that the taking was by the corporation itself for corporate purposes, and not by its officers or agents. As we understand, it was on these grounds that the case was distinguished from *Gibbes v. Beaufort,* supra, and other like cases decided in this

State. The doctrine of the decision, however, is not applicable to this case, for the reason that here there is no taking of private property by the corporation, but an injury resulting in death from the alleged failure of an employee of the municipality to perform the duties imposed on him by the municipality."

It will thus be seen that this Court recognized the fact that the case of *Dunn v. Barnwell,* 43 S. C. 398, 21 S. E. 315, 49 Am. St. Rep. 843, and other cases announcing the same doctrine, are inapplicable to cases involving the taking of property without due process of law or just compensation being first made, and, in this respect, that they were practically overruled by the case of *Hopkins v. Clemson College.*

We call attention also to the fact that Mr. Justice Hydrick, in the Triplett Case, did not mention the case of *Hopkins v. Clemson College* as applicable to the facts in the Triplett Case, but stated that the judgment in the Mayrant Case could be sustained by the Hopkins Case, on the ground that in the Mayrant Case there was a taking of private property without compensation. The right to throw surface water upon the lands of another was involved, both in the Mayrant Case and the Triplett Case. The reason why he did not apply the same doctrine as to taking property without due process of law in both cases was because the facts in the Mayrant Case were sufficient to constitute a cause of action against an individual, and brought the case within the doctrine announced in *Brandenburg v. Zeigler,* 62 S. C. 18, 39 S. E. 790, 55 L. R. A. 414, 89 Am. St. Rep. 887, while the facts in the Triplett Case were not sufficient to constitute a cause of action, even if the defendant in that case had been an individual, which is the true test, as the case of *Hopkins v. Clemson College* shows that in cases involving the taking of property without due process of law the governmental sub-

divisions of the State are to be regarded as if they were individuals. The case of *School District v. Marion County,* 114 S. C. 382, 103 S. E. 767, is sustained by the Hopkins Case.

If these were not the reasons which governed Mr. Justice Hydrick, then he was in error in stating that the judgment in the Mayrant Case was right, as otherwise the judgment in both cases should have been the same.

Affirmed.

MR. JUSTICE WATTS concurs.

MR. JUSTICE FRASER: I concur, under *School District v. Marion County,* 114 S. C. 382.

MESSRS. MEMMINGER, DEVORE, FRANK B. GARY, PEURIFOY and SHIPP, Circuit Judges, concur.

MOORE, Circuit Judge, (concurring) : Concurring in the opinion of Associate Justice Cothran that the complaints in these two cases cannot be sustained as setting forth a cause of action for damages against the county for negligent construction or repair of a highway under the provisions of Section 1972 of the Civil Code, nevertheless, upon a fair consideration of the complainants' allegations in each of this cases, it is concluded that each of these complaints contains a statement of facts sufficient to constitute a cause of action for the recovery of compensation for the alleged taking of private property for public use under the statutes of this State passed in pursuance of the declaration of the State Constitution that such property shall not be so taken without just compensation being made therefor.

In the exhaustive opinion herein pronounced by Mr. Justice Cothran, the common-law doctrine in force in this State as to surface water is correctly stated to the effect that such water is regarded as a common enemy which each landed proprietor may keep off his own premises by any reasonable means, even though he should thereby throw or keep it on his neighbor's land. See *Lawton v. Railway,*

61 S. C. 548, 39 S. E. 752.    But the learned Justice in this opinion has failed to give due consideration to the well-settled exception to or qualification of this rule clearly set forth by Justice Gary, now Chief Justice, in the case of *Touchberry v. Railway Co.*, 87 S. C. 415, 69 S. E. 877, in the holding there made, which is fully sustained by well-settled authority, that it is an actionable injury for one to collect surface water into an artificial channel, and thence cast the same in concentrated form upon adjacent lands.    See *Brandenberg v. Zeigler*, 62 S. C. 18, 39 S. E. 790, 55 L. R. A. 414, 89 Am. St. Rep. 887; *Cain v. Railway*, 62 S. C. 25, 39 S. E. 792.

These cases proceed upon the principle that the owner has a property right in his lands which is invaded by the act of another in casting surface water in concentrated form upon such lands. It is therefore manifest that, if the defendant has invaded the rights of the plaintiff by so casting surface water upon the lands of the latter in concentrated form, such act would amount to the taking of the property of the plaintiff pro tanto; and such taking being charged in the complaint to have been done by the defendant for the construction, alteration, or repair of a public highway, the defendant would thereby be taking private property for public use, for which taking just compensation must be paid as required by Section 17 of Article 1 of the State Constitution.

Rejecting as surplusage the averments of the complaints in the cases here at bar in so far as they charge negligence by the defendant in the construction of the highway, there still remain allegations sufficiently charging the taking of the property of the plaintiff for public use by the defendant, and a consequent liability of the defendant to make compensation therefor. It is well established in this State that such an action for compensation for the taking of private property for public use may be maintained in this State

wnere the right to compensation is denied by the defendant. See *Cureton v. Railway,* 59 S. C. 371, 37 S. E. 914; *Railway v. Reynolds,* 69 S. C. 481, 48 S. E. 476, and cases there cited.

For these reasons, the circuit orders overruling the demurrers to these complaints should be affirmed.

MESSRS. SEASE, BOWMAN, and TOWNSEND, Circuit Judges, concur.

MR. JUSTICE COTHRAN    ( dissenting ) :  ·These two actions were·heard together upon demurrers by the defendant to the complaints.    The demurrers were overruled by the County Judge and from his orders the defendant has appealed. In each case the plaintiff claimed damages by reason of·injury to his premises on account of the elevation of the roadbed of a highway and the filling in of parallel drains, resulting in the throwing back of surface water upon his premises.

· The complaints in the two cases are practically identical; an analysis of one will apply equally to the other, as will also the determination of the legal questions involved. We adopt the trial Judge's statement of the facts constituting the alleged cause of action in the case of J. H. Faust:

"Plaintiff's land and his dwelling are situated upon a hill side which slopes toward the east, so that waters accumulating from the rainfall over a considerable area to the west naturally flow over his land.    Previously much of the water was caught by ditches alongside of the public road, and finally conveyed away in a ditch intersecting said road without any injury to plaintiff's property.   By elevating the roadbed and filling in the said drainage ditches, the defendant is alleged to have caused the rainwater to accumulate and be forced in great volume onto plaintiff's property, corroding the surface soil, weakening the foundations to his dwelling, and otherwise causing damage. All such re-

sults are alleged to have been due to defendant's negligence in repairing the said highway."

We adopt also his statement that the complaint concerns surface water only, and presents a case, not of draining surface water by a ditch onto the lands of a lower proprietor, "but preventing the flow of surface water upon your own," "even if in so doing throws it back upon a coter minus proprietor to his damage." As he declares: "We are now dealing with a case of the latter class."

The defendant demurred to the complaint in each case upon the ground that it does not state facts sufficient to constitute a cause of action; the specification will be reported.

The demurrers were heard by the Honorable M. S. Whaley, County Judge, who filed an order, which will be reported, overruling the same. From this order the defendant has appealed.

Under the interpretation of the complaint placed upon it by the trial Judge, to which the respondent has made no objection, and which we therefore assume to be correct and adopt, the case presented is one of a lower proprietor fighting off surface water and throwing it back upon the upper proprietor to his injury. If, under these circumstances, the defendant were a private person or corporation, and not a municipal corporation, as the trial Judge holds, the case of *Baltzeger 'v. Ry. Co.,* 54 S. C. 245, 32 S. E. 359, 71 Am. St. Rep. 789, would be "conclusive of the issue here against the plaintiff," that case holds that—

"No legal right of any kind can be claimed, jure naturae, in the flow of surface water, so that neither its detention, diversion, nor repulsion is an actionable injury, even though damage ensue." " The only exception to the rule that, surface water being a common enemy, every landowner has the right to deal with it in any such manner as he may see fit, is that it is subject to the general law in regard to nuisances. * * * "

To which should be added the further exception that he may not, by artificial means, pond surface water upon his own premises, and by ditches, drains, or other channels, discharge it thus concentrated upon the lands of the lower proprietor to his injury. *Brandenburg v. Zeigler,* 62 S. C. 18, 39 S. E. 790, 55 L. R. A. 414, 89 Am. St. Rep. 887.

The doctrine declared in the Baltzeger Case is sustained by the following cases: *Edwards v. R. Co.,* 39 S. C., 472, 18 S. E. 58, 22 L. R. A. 246, 39 Am. St. Rep. 346; *Lawton v. Ry. Co.,* 61 S. C. 548, 39 S. E. 752; *Brandenberg v. Zeigler,* 62 S. C. 18, 39 S. E. 790, 55 L. R. A. 414, 89 Am. St. Rep. 887; *Johnson v. Ry. Co.,* 71 S. C. 241, 50 S. E. 775, 110 Am. St. Rep. 572; *Touchberry v. R. Co.,* 87 S. C. 415, 69 S. E. 877.

Notwithstanding this apparently insuperable obstacle to the plaintiff's alleged cause of action, he insists that he is entitled to recover upon either of two grounds:

(1) That the immunity referred to, which extends to every class of proprietors at common law, whether they be private individuals, private corporations, or municipal corporations, is annulled by the provisions of Section 1972, Vol. 1, Code of Laws A. D. 1912.

(2) That the exercise of the common-law right of a lower proprietor to detain, divert or repel surface water, for the protection of his own property, when injury results to an upper proprietor, constitutes a taking of, or damage to, his property without compensation, in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States, and of a similar provision in the Constitution of South Carolina.

As to the first proposition: It being the settled law of this State that surface water, in contradistinction to the waters of a natural water course, is regarded as a common enemy, hostis humani generis, and that a lower proprietor has the legal right to fight it back from his land, even if

in so doing injury may result to the upper proprietor, it is clear that, if the plaintiff can obtain relief under Section 1972, that section must be construed to have accomplished a double result: (1) To render a county liable for an injury resulting from a defect in, or negligent repair of, a highway, etc., a liability which did not theretofore exist against a county; and (2) To render a county liable for throwing back surface water upon an upper proprietor by means of elevation of the roadbed, a liability which did not theretofore exist against a county or against any other class of proprietors.

The section as variously amended, which we take from the advance sheets of the Revisal of 1922, there numbered 3163, is as follows:

"Any person who shall receive bodily injury or damage in his person or property through a defect or in the negligent repair of a causeway, or bridge, or of any ferry operated by the county, may recover in an action against the county the amount of actual damage sustained by him by reason thereof: Provided, such person has not in any way brought about such injury or damage by his own act or negligently contributed thereto. If such defect in any road, causeway, or bridge, or in any ferry operated as aforesaid, existed before such injury or damage occurred, such damage shall not be recovered by the person so injured if his load exceeded the ordinary weight: Provided, further, that such county shall not be liable unless such defect was occasioned by its neglect or mismanagement: Povided, further, that if in any case brought under this section it is made to appear that before the damage occurred the supervisor or other officer or officers of such county, who is or are thereunto charged by law, had been notified in writing, by any citizen, that the highway, causeway, or bridge, or ferry operated as aforesaid, at or on which the damage occurred, was defective, or needed re-

pair, the burden of proof as to the negligence of county officials shall not be upon the county to show, either that such defect did not in fact exist, or that it had been properly repaired, or that a reasonable time had not elapsed since such notice within which to make such repairs."

Attention is called to the fact that in the Amendatory Act of 1920 (31 St. at Large, p. 1021), and in this Revisal, the word "highway" has been omitted. A serious question might arise as to the effect of this omission as a repeal of the prior law. Our conclusion upon other grounds, however, renders a discussion of this question unnecessary at this time.

Section 1972 is a process in the evolution of the law. The act of which it is a reproduction was intended to provide a remedy (under certain prescribed conditions) which did not theretofore exist; to remove the immunity which a county enjoyed under the common law, from liability in damages, on account of an injury sustained by a person "through a defect in the repair of a highway."

It is very true that it was intended to create a liability in the county which did not theretofore exist, but which did exist in every tort-feasor, not clothed with a governmental attribute, in other words, to place the county, so far as the particular duty of keeping highways in repair was concerned, upon the same plane of liability as that occupied by every other tort-feasor; it clearly was not intended, in addition to this, to make a discrimination against the county and create a liability in it which did not, and does not, exist in any other lower proprietor. This is apparent from a further consideration: If the conditions were reversed and the plaintiff was throwing back surface water upon the property of the county, an upper proprietor, he would be entitled to the immunity on this account accorded to all lower proprietors. The plaintiff can therefore get no relief from this section, so far as it may be claimed

to create a liability in the county, which theretofore did not exist in any lower proprietor similarly situated.

But assume for the sake of argument that no such manifest injustice appears to hold the county liable for fighting back surface water (an immunity enjoyed by every other class of proprietors, including the plaintiff, should conditions be reversed), and that the facts present a case of liability against any other proprietor for ponding surface water upon his own land and discharging it, concentrated in a ditch, upon a lower proprietor; we are of opinion that they do not present a case of liability under the Statute against a county, for the reasons: (1) That the alleged injury is not shown to have resulted from a defect in or the negligent repair of a highway; (2) that the plaintiff is not shown to have been at the time of the injury in the exercise of his right to the use of the highway as such.

As the Court says in *Chick v. Newberry,* 27 S. C. 419, 3 S. E. 787:

"Prior to its adoption, the disability was general, and still remains as to all except such as are taken out by the act."

In that case it was held that a county was not liable for injuries caused by a defective flatboat on a ferry operated by the County Commissioners, the Court declaring:

"The act in question undertakes to enumerate the cases in which the right to sue the county is given, viz., 'for defects in the repair of a highway, causeway, or a bridge.' This enumeration, as it seems to us, excludes matters not enumerated"

—which illustrates with what strictness the statutory liability is limited. There it was conceded that the ferry connected the two termini of the highways at the river; that it was owned and controlled and operated by the County commissioners; that the flatboat was defective, and that injury resulted.

There are two sections of the Code of Laws which come under consideration in the discussion of the question : Section 1972, relating to the liability of counties; and Section 3053, to the liability of cities and towns. There are some slight differences in the provisions of the two sections, but in the main the purpose is the same, and is expressed in practically the same language. Hence the decisions concerning the one are instructive in the consideration of the other.

It will be.noted that the phrase, "mismanagement of anything under the control of the corporaion," occurs in Section 3053, relating to cities and towns, but does not occur in Section 1972, relating to counties.

It will also be noted that Section 3026 prescribing the duty of a city or town in reference to the drainage of its streets, and prohibiting the turning of water upon a property owner, applies only to cities and towns and not to counties. This is important, for the reason that in some of the cases involving Section 3053 the liability of the city is sustained under Section 3026, and 'not 3053.

There are certain principles applicable to both sections which have been thoroughly established. They are:

(1) A municipal corporation, being a governmental agency, charged with the duty of keeping its avenues of travel in proper repair, ·is not liable, in a civil action, for damages on account of injuries sustained in consequence of a breach of this duty on the part of the agents of the corporation, in the absence of a statute imposing such liability, and only then upon a substantial compliance with the requirements and conditions upon which such liability is predicated. *Bryant v. City Council,* 70 S. C. 137, 49 S. E. 229; *Gibbes v. Beaufort,* 20 S. C. 218; *White v. City Council,* 2 Hill, 572; *Coleman v. Chester,* 14 S. C. 290; *Black v. Columbia,* 19 S. C. 412, 45 Am. Rep. 785; *Young v. City Council,* 20 S. C. 116, 47 S. E. 827; *Dunn v. Barnwell,* 43

S. C. 398, 21 S. E. 315, 49 Am. St. Rep. 843 ;*Bramlett v. Laurens,* 58 S. C. 60, 36 S. E. 444.

(2) The statutes create a liability upon a municipal corporation for a breach of this duty only where the injury has resulted from a defect in or the negligent repair of said avenues of travel. *Hutchison v. Summerville,* 66 S. C. 442, 45 S. E. 8; *Irvine v. Greenwood,* 89 S C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363; *Creps v. Columbia,* 104 S. C. 371, 89 S. E. 316; *Burnett v. Greenville,* 106 S. C. 255, 91 S. E. Ann. Cas. 1918C, 363; *Dunn v. Barnwell,* 43 S. C. 398, 21 S. E. 315, 49 Am. St. Rep. 843.

Mr. Justice Hydrick, in his dissenting opinion in the case of *School District v. Marion,* 114 S. C. 382, 103 S. E. 767, correctly declares the law to be:

"The language of the section makes it almost too plain for argument that the negligence for which the county is made liable must result in such a defect in, or defective condition of, the highway, as makes it unsafe for travel, and such has been the uniform construction of it by this Court."

*Acker v. Anderson,* 20 S. C. 495: The plaintiff was injured in consequence of the mule that he was driving taking fright at an advertisement upon a bridge and backing the buggy down the embankment. The Court held that the case did not fall within the statute, declaring:

"Even if the commissioners had allowed it to be placed there, it is more than doubtful whether the county could have been made liable. The only matter for which the act gives an action against the county is a 'defect in the repair of a highway, causeway or bridge.' "

*Duncan v. Greenville,* 71 S. C. 170, 50 S. E. 776: The leaving of a wagon in the public road so far as to put travelers in peril was held under Section 1972 a failure to keep the road in repair, a defect in the road. See, also, *Stone v. Florence,* 94 S. C. 375, 78 S. E. 23.

· *Moss v. Aiken,* 114 S. C. 147, 103 S. E. 520: A negligent collision between a motor truck operated by an employee of the county and an automobile operated by one lawfully on the highway, and using it as such, was held within the provisions of Section 1972, evidently upon the ground that the negligent interposition of the truck, in the pathway of the automobile was a defect in the high-way, and obstruction of the free passage to which the operator of the automobile was entitled. The case of *Burnett v. Greenville,* 106 S. C. 225, 91 S. E. 203, Ann. Cas. 1918C, 363, was relied upon as decisive of the question.

In *Dunn v. Barnwell,* 43 S. C. 398, 21 S. E. 315, 49 Am. St. Rep. 843, the Court declares:

"There is nothing whatever in the act indicating an intention on the part of the Legislature to make a municipal corporation liable for any other nonfeasance or misfeasance on its part, except such as was connected with the keeping of the streets, etc., in proper and safe repair."

(3) Those only who at the time of the injury are making use of said avenue of travel for the legitimate purposes of travel are entitled to the benefit of the statutes.

That the section was intended to cover only an injury sustained by a person who was at the time using the highway as a highway of travel is apparent from the terms of the section: An injury through a defect in the highway; an injury through the negligent repair of the highway; no liability where the load of the person injured exceeded the ordinary weight; no liability where a reasonable time had not elapsed since notice to the county officials within which to make the repairs. There is not an expression in the section which indicates that the section was intended to cover any other injury than that sustained by one using the highway as such.

Discussing the Mayrant Case, 77 S. C. 281, 57 S. E. 857, 10 L. R. A. (N. S.) 1094, Mr Justice Hydrick, for the Court says:

"In the Mayrant Case the wrong was alleged to have been caused by negligence in raising the level of the street, closing up the existing surface drains, and so negligently installing drain pipes of insufficient size and fall to carry off the surface water (which had theretofore been carried off by the surface drains) that it was thrown and ponded upon plaintiff's lot. In this case, the negligence alleged consists in failing to drain the surface water off the street, and thereby allowing a cesspool to be created and remain in the street which caused plaintiff's sickness. In neither case was the injury caused by any defect in the street which interfered with or affected the use of it for ligitimate street purposes."

*Burnett v. Greenville,* 106 S. C. 255, 91 S. E. 203, Ann. Cas. 1918C, 363: A collision between an automobile which was negligently allowed by the city to use a main thoroughfare as a place of practice for hill climbing, racing at great speed, and an automobile operated by one lawfully entering the street from a cross street, was held within the provisions of Section 3053, which contains provisions applicable to cities and towns similar to those of Section 1972. The ground of the decision was:

"That the street thus dedicated by the authorities to a hazardous use was not then reasonably safe for prime purposes;" and "these words (through a defect in any street) * * * include the keeping of a street in such physical condition that it will be reasonably safe for street purposes."

*Irvine v. Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363: Allowing a chain to hang down from an electric light, charged with electricity, in easy reach of a boy playing in the street, was held within the provisions of Section 3053. The ground of the decision was that such act constituted a defect in the street:

"To keep a street in repair means to keep it in such physical condition that it will be reasonably safe for street purpbses. It is not enough that its surface should be safe; a street is not in repair when poles or wires or other structures are so placed in or over it as to be dangerous to those making a proper use of the street."

The Court, construing the statute further, says:

"In the case of *Dunn v. Barnwell,* 43 S. C. 398, 21 S. E. 315, the Court construing the statute in the light of its title, held that the liability created by it was limited to misfeasance or nonfeasance connected with the keeping of 'any street, causeway, bridge or public way' in proper repair."

*Creps v. Columbia,* 104 S. C. 371, 89 S. E. 316: A pedestrain was injured by a fire engine belonging to the city, alleged to have been negligently operated. The act was held within the statute (Section 3053) upon either ground, that the negligent operation of the fire engine constituted a defect in the street, in not keeping it "in repair and reasonably safe for street purposes," and also was the "mismanagement of anything under the control of the corporation," a clause which appears in Section 3053, relating to cities and towns, but not in 1972, relating to counties.

The question is concluded by the decision of this Court in the case of *Triplett v. Columbia,* 111 S. C., 796 S. E. 675, 1 A. L. R. 349 (which distinctly overrules a contrary conclusion in the case of *Mayrant v. Columbia,* 77 S. C. 281, 57 S. E. 857, 10 L. R. A. (N. S.) 1094, unless this Court is prepared to hold that the case of *School District v. Marion County,* 114 S. C. 382, 103 S. E. 767, overrules the Triplett Case. The two cases are in direct opposition to each other; both cannot stand. The Triplett Case is in harmony with a long line of decisions of this Court; the decision commends itself to our judgment; the other

19—S. C. 117

is not, and does not. The former is accordingly reaffirmed, and the latter overruled.

In the Triplett Case, 111 S. C. 7, 96 S. E. 675, 1 A. L. R. 349, the Court held, construing Section 3053, affecting cities and towns, that it was applicable only to injuries sustained by a person using the street as such through a defect in or negligent repair of the street or mismanagement of something under the control of the corporation, and that it does not apply to the case of a property owner made ill by a depression in the street filled with stagnant water.. This presents really a stronger case for the plaintiff than the one at bar, for the reason that there the depression in the street which caused the formation of the pool of water was a defect in the street itself, an instance of negligent repair, while here there is no such claim; in fact, here, the more perfect in construction and repair the elevated highway may be, the more efficient it becomes in throwing the water back upon the plaintiff.

The facts in that case upon which the plaintiff relied were, in brief, as follows: The city through neglect and mismanagement permitted a large pool of stagnant water 15x25 feet, and in places 4 feet deep, filled with trash, refuse, and decaying matter, to remain in a street, which caused the illness of the plaintiff. The city demurred to the complaint upon the ground that the action was not justified by Section 3053. The demurrer was heard by Circuit Judge Mendel L. Smith, who in an elaborate and convincing decree sustained the demurrer, or motion to dismiss, as it is termed. This Court unanimously, with the exception of the Chief Justice, who did not sit in the case, sustained not only the conclusions, but the reasoning of Judge Smith, and filed an opinion for the purpose only of overruling a contrary conclusion in the Mayrant Case, 77 S. C. 281, 57 S. E. 857, 10 L. R. A. (N. S.) 1094.

It is impossible to differentiate this case from the case at bar, unless it be determined that top soil, fruits and vegetables must be accorded a more favorable consideration than health and life.

The case of *Heape v. Berkeley,* 80 S. C. 32, 61 S. E. 203, is a stronger case for the plaintiff than the case at bar, in that the act there complained of was that of the road overseer in opening a ditch parallel with the highway and extending it at a right angle across the highway and through the school lot to the land of the plaintiff, by which surface water collected in the highway was concentrated and emptied upon the plaintiff's land. This presented a case of ponding surface water by an upper proprietor, and by means of ditches throwing it in concentration upon the lower proprietor, which is inhibited under the Brandenburg Case, *supra.* It was not suggested in the case that the plaintiff had a cause for action under Section 1972. The Circuit Court held that the county was not liable for the acts of the overseer; that there was no statute in this State which authorized the action and dismissed the action against all of the defendants, the overseers having been joined. This Court sustained the order below upon the authority of *Matheny v. Aiken,* 68 S. C. 163, 47 S. E. 56, and *Parks v. Greenville,* 44 S. C. 168, 21 S. E. 540.

There are also certain well-established principles applicable to injuries sustained in cities and towns, which by reason of the absence of corresponding statutory provisions, are not applicable to injuries sustained in the county:

(1) In addition to liability for injuries arising from defects in or the negligent repair of streets, cities and towns are made liable by Section 3053 for injuries sustained by reason of "mismanagement of anything under the control of the corporation."

(2) The phrase "mismanagement of anything under the control of the corporation" is construed to mean mismanagement in making repairs on the streets.

*Hutchison v. Summerville,* 66 S. C. 442, 45 S. E. 8: This was a clear case of a defect in the street. The town had maintained a sidewalk ¡which ended abruptly in a ditch, unguarded, into which the plaintiff fell. It is cited to show how carefully the Court has confined the liability of the municipality under Section 3053 to cases of defects in or negligent repair of a street. The Court holds that the clause "mismanagement of anything under control of the corporation" was limited, as was done in the case of *Dunn v. Barnwell,* 43 S. C. 401, 21 S. E. 316, 49 Am. St. Rep. 843, to "mismanagement in making repairs on the streets, so that the corporation should be held liable not only for neglect in making repairs on the streets, but also for mismanagement of anything under the control of the corporation *in making such repairs.*" (Italics by the Court.) This clause does not appear in Section 1972. See, also, *Barksdale v. Laurens;* 58 S. C. 413, 36 S. E. 661.

(3) Under Section 3026, it is made the duty of a city or town to provide sufficient drainage for surface water so as to prevent the passage of such water over the private property of adjacent owners. For a breach of this duty, the city or town is liable for resulting damages.

Reviewing now the cases in this State, some apparently, and others actually, in conflict with the foregoing conclusions:

*Mayrant v. Columbia,* 77 S. C. 281, 57 S. E. 857, 10 L. R. A. (N. S.) 1094: It was held that, where a city so negligently constructed its drainage pipes and raised the street that the surface water was ponded and caused the collection of filth, rendering the premises unsanitary and uninhabitable, it was liable in damages to the owner under Section 3053. No further discussion of the case is necessary

than to refer to the case of *Triplett v. Columbia,* 111 S. C. 7, 96 S. E. 675, 1 A. L. R. 349, where the ruling is expressly repudiated, and the case, so far as referring the liability of the city to Section 3053, is distinctly overruled. The Courts, however, held that the action was maintainable under Section 3026, which, as we have noted, has no application to counties.

*Columbia v. Melton,* 81 S. C. 356, 62 S. E. 245, 399; Id., 85 S. C. 558, 67 S. E. 902: Mrs. Melton owned a lot in the city; by means of pipes the city was discharging collected surface water on her lands; she instituted condemnation proceedings to assess her damages; the city brought an action to enjoin the proceedings; she answered justifying the proceedings; the city demurred to the answer, alleging that her remedy was an action for damages; this Court sustained the order below overruling the demurrer (Mr. Justice Woods dissenting) holding that the appropriate remedy was an action for damages under Section 3053 or under 3026; the case was then called for trial and an issue submitted to a jury whether the city had acquired by prescription the right to turn water on the lot, which was answered in the affirmative; the Circuit Judge set aside the verdict, and refused the city's prayer for injunction against the condemnation proceedings; on appeal the Court adopted the dissenting opinion of Mr. Justice Woods on the first appeal, holding that the property owner's remedy was an action for damages, and not a proceeding in condemnation, and enjoined the condemnation proceedings. This case is not authority to sustain the plaintiff's action in the case at bar against a county under the statute for two reasons. The action there was sustained upon either ground: (1) That the injury was due to the "mismanagement of anything (something) under control of the corporation," which clause does not appear in the county act, Section 1972; (2) that the injury was due to the failure

of the city to comply with the requirements of Section 3026 in the matter of providing drains to prevent the passage of water upon private lands. There is no corresponding statute as to a county.

*Scott v. Richland,* 83 S. C. 506, 65 S. E. 729: The plaintiff alleged that the defendant, in working upon the highway in front of his house, removed the drains and raised the roadbed, in such a way as to turn the water from the road and neighboring land upon his land to his injury. The defendant interposed a demurrer to the complaint—upon what grounds does not appear— though it may be assumed from the opinion that the ground of the demurrer was the failure to allege that the defect which caused the injury was occasioned by neglect or mismanagement on the part of the county. The Court held that, while the complaint was defective in this respect, there was enough alleged to save it from the demurrer. The question under discussion upon this appeal was not suggested or discussed, and we do not regard the case, though quite similar in its facts, as at all bearing upon such question.

The case of *School District v. Marion County,* 114 S. C. 382, 103 S. E. 767, is in direct conflict not only with the provisions of the section, but with the previous decisions of this Court, and should be overruled. It was decided by a divided Court, Mr. Justice Watts delivering the opinion, concurred in by the Chief Justice and by Mr. Justice Gage (upon a matter of policy as to pleadings), and attacked by a convincing dissenting opinion of Mr. Justice Hydrick, concurred in by Mr. Justice Fraser The case as made by the complaint was one where the agents of the county, while engaged in the repair of a highway, went outside of the limits of the highway and destroyed certain shade trees upon the schoolhouse lot, which fronted on the highway. It was decided upon a demurrer to the complaint not upon the grounds that the acts com-

plained of were within the terms of Section 1972, but upon one ground:

"There is no doubt that the hands employed by the county in repairing the road were under the control of the county, acting within the scope of their employment. For any negligent act on their part in building or making repairs on the highway, by which a party is injured, they must respond in actual damages."

If the expression, "they must respond in actual damages," refers to the employees guilty of negligence, the declaration is entirely correct, but it is no ground for sustaining an action against the county; if it refers to the county, it is the declaration of a doctrine that the county is liable for the negligent act of its employees, independently of Section 1972, which cannot be sustained, for under the law the county is liable only under the conditions specifically enumerated in the statute.

As to the second proposition.    It has been suggested that the plaintiff's action may be sustained upon the ground that to declare the county's immunity from liability for the in jury inflicted upon the plaintiff would amount to a deprivation of his property without due process of law, without just compensation, in violation of the Constitution of the United States; and that this position is sustained by the case of *Hopkins v. Clemson College,* 221 U. S. 636, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243.

Of course, if the plaintiff's case can be brought within the principles declared in that case, the position is well taken.

It must be borne in mind however: (1) That the act relied upon to constitute a taking of or damage to the plaintiff's property was committed by the defendant in the exercise of the common-law right of a lower proprietor to detain, divert, or repel surface water, for the protection of his own property, a right out of which no cause of

action could arise; it is impossible to conceive that a case of taking or damage can be born of the exercise of a legal right. (2) That the act complained of was committed, not by the corporation, the county, but by its agents and servants, for whose nonfeasance or misfeasance the county cannot be held legally responsible in the absence of a statute so providing.

These constitute material points of discord between the Hopkins Case and the case at bar, neither of which facts as we shall see, appear in the Hopkins Case; the result of which discord renders the Hopkins Case entirely inapplicable.

The facts in that case were these: Hopkins owned a body of bottom land on the west side of Seneca River immediately opposite a similar body owned by Clemson College or by the State of South Carolina; in order to protect its own bottom land from disastrous overflows, the college, by its trustees, erected and maintained a high embankment on the eastern bank of the river, the construction of which, as was perfectly natural, so narrowed the customary overflow channel of the river as to force the water in flood time across the land of Hopkins, destroying the natural bank of the river, washing away the rich soil and practically ruining the bottoms for agricultural purposes. Hopkins sued the college, a corporation, for damages and injunction. There was no demurrer, but the college filed what was treated as a plea to the jurisdiction, in which it was averred that it owned no propery and had constructed the dyke as a public agent only, by authority of the State, on land belonging to the State. The circuit decree was in favor of the college. Upon appeal to this Court, it was decided that the action was one in tort against the State, that the State was a necessary party to the equitable cause of action for injunction, and that the action could not be maintained without the consent of

the State.    The circuit decree was accordingly affirmed,
and the complaint dismissed.      The case was then taken to
the Supreme Court of the United States by writ of error.

The main question discussed and decided by that Court
is thus expressed in the opinion of Justice Lamar:

"Whether a public corporation can avail itself of the
State's immunity from suit, in a proceeding against it for
so managing the land of the State as to damage or take
private property without due process of law?"

In this main question are involved two questions, the
main question in fact being a composite of the two:

(1)  Was the action really an action against the State?

(2)  If not, was the property of the plaintiff damaged
or taken without due process of law, in consequence of the
construction and maintenance of the dyke by the college,
the agent of the State?

In discussing the first question, the Court seems to have
considered it a federal question, and declares:

"With the exception named in the Constitution, every
State has absolute immunity from suit.    Without its consent
it cannot be sued. in any Court by any person,  for  any
cause of action whatever."

From this statement it would naturally be inferred that
this guaranty of immunity was secured by some provision
in the Constitution of the United States.   As a matter of
fact, the only guaranty of immunity is contained in the
Eleventh Amendment, which relates to actions in the Fed-
eral courts and actions between a State and citizens of
another State or subjects of a foreign State.   The question
of the immunity of a State from an action by a citizen
of that State is essentially a State question and not a
Federal one, as seems to have been considered.

Attention is called to this matter, not with any inclina-
tion to disregard the conclusions of the Court which are
binding upon this Court, but that we may not be misled

into the erroneous conception that the question of the State's immunity from suit in an action by a citizen of that State is a Federal question.

The questions of the State's immunity from suit, and whether or not certain alleged facts constitute a suit against the State, are entirely distinct. It is conceded that, in passing upon the question of the deprivation of the plaintiff's property without due process, in violation of the Federal Constitution, the question is open to the Federal Court whether or not the facts alleged really constitute a suit against the State; the Federal Supreme Court was therefore within its rights in determining that question, and following it with a discussion and determination of the second question stated above.

It is worthy of notice that the opinion draws a distinction between the immunity of a State from suit and the immunity of political subdivision from liability, conceding that, while the latter cannot claim the immunity from suit accorded to the State, it may claim, under well-recognized principles, immunity from liabilty when sued. It is said:

"If they were indeed agents, acting for the State, they— though not exempt from suit— could successfully defend by exhibiting the valid power of attorney or lawful authority under which they acted."

Again:

"Undoubtedly counties, cities, townships, and similar bodies politic often have a defense which relieves them from responsibility where a private corporation would be liable. But they must at least make that defense. They cannot rely on freedom from accountability as could a State."

And, referring to cases holding that certain boards have been held to be agents of the State, not liable to suit unless expressly made so by statute, the Court adds:

"But an examination of the case cited, in any respect similar to this, will show that they involve questions of liability in a suit rather than immunity from suit.

We do not quite appreciate the practical results of the distinction between immunity from suit and immunity from liability; yet, following up the line of thought suggested, and applying it to this case, the county may not be immune from suit, but, being sued, it may set up the defense which is obliged to prevail that it is not liable for the nonfeasance or misfeasance of its agents while in the performance of governmental duties, unless expressly so made by statute.

It will be observed that the first point of distinction between the two cases adverted to above plainly appears. In the Hopkins Case the tort complained of consisted in the diversion of the waters of a natural water course, the Seneca River. The right to have it flow as it was accustomed to flow was a right incident to the proprietorship of the plaintiff's land as a riparian owner, and interference with that right was an actionable wrong, which was none the less so because committed by an agent of the State; if it was a wrong, the legal right to do so was necessarily denied. In the case at bar the tort complained of is the throwing back of surface water by a lower proprietor upon the land of the upper proprietor, a privilege which, under the unbroken line of decisions in this State, the lower proprietor has the right to exercise, without accountability for consequent damage; it is damnum absque injuria. Being the exercise of a legal right, and not the commission of a wrong, as in the Hopkins Case, it is impossible to make out of it a taking or damage without compensation in the sense of the constitutional inhibition.

The Court further sustains the liability of the college by a kind of reciprocal argument thus:

"The embankment was in law similar to one which might have been built for private purposes by the plaintiff on the other side of the river. If he had there constructed a dyke to protect his farm, and in so doing had taken or damaged the land of the college, he could have been sued and held liable. In the same way, and on similar principles of justice and legal liability, the college is responsible to him." etc.

By analogy, if the positions were reversed, and the plaintiff, to fight back surface water, should construct an embankment along his line and throw the surface water back upon his neighbor, an upper proprietor, who might be the county, he would be immune from liability for resulting damage, under the Edwards and other cases cited above. If so, why, upon the same principles "of justice and legal liability," should not the defendant be likewise immune from liability to him?

The second point of distinction adverted to above appears with equal clearness. After deciding that the action was not one against the State, out of which would have arisen absolute immunity from suit or liability, the Court holds that the destruction of the plaintiff's property amounted to an unlawful taking, upon the ground that the act complained of was committed by the college itself, and not by its officers or by the officers of the public; that it was the corporate act of the college, distinguishing the case from *Gibbes v. Beaufort,* 20 S. C. 213, and recognizing that case to correctly declare the law, in this State, at least that—

"A municipal corporation, instituted for the purpose of assisting a State in the conduct of local self-government, is not liable to be sued in an action of tort for nonfeasance or misfeasance of its officers in regard to their public duties, unless expressly made so by statute."

In other words, in effect holding that, if the college had not, as the act of the corporation, directed the construction of the dyke, and the tort complained of had been the result of the unauthorized negligent acts of its employees, the college as an instrumentality of the government, an agent of the State, would not have been held liable.

In *Mullinax v. Hambright,* 115 S. C. 76, 104 S. E. 309 the plaintiff sued the Cherokee county highway commission for the wrongful death of his intestate caused by the negligent act of the individuals composing the commission. The order of the Circuit Court sustaining a demurrer to the complaint was affirmed by this Court, upon the ground that the commission, being a governmental agency, was not subject to an action for tort. This principle was reaffirmed in the second appeal in the same case, recently decided, when the order of the Circuit Court sustaining a demurrer to the complaint so far as the individual members of the commission were concerned was reversed.

"It is a well-settled rule that a public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally co-operated in the negligence." 23 A. & E. Enc. L. 382.

"A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances * * * or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties." *Robertson v. Sichel,* 127 U. S. 507, 8 Sup. Ct. 1286, 32 L. Ed. 203.

"Public officers are not, as a general rule, liable for the acts of subordinates, even where such subordinates are employees rather than officers, except where the negligence of such subordinates is attributable to the superior." 29 Cyc. 1445.

"Public officers and agents of the government are not liable for the acts or defaults, negligence or omissions of subordinate officials in the public service, whether appointed by them or not, unless they direct the act complained of to be done, or personally co-operate in the negligence from which the injury results. Where the subordinates have been appointed by them it is sufficient if they have employed trustworthy persons of suitable skill and ability, and have not been negligent in selecting such subordinates." 22 R. C. L. 487.

This principle was held inapplicable in the Hopkins Case, for the reason that the action was brought, not against the agents of the college but against the college itself, the perpetrator of the tort, the corporate act of the college, as these extracts from the opinion show:

"The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the State's citizens. To grant them such immunity would be to create a privileged class, free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law."

"The many claims of immunity from suit have therefore been uniformly denied, where the action was brought for injuries done or threatened by public officers."

"Besides, neither a State nor an individual can confer upon an agent authority to commit a tort so as to excuse the perpetrator. In such cases the law of agency has no application—the wrongdoer is treated as a principal and individually liable for the damages inflicted and subject to injunction against the commission of acts causing irreparable injury."

"Plaintiff was denied a hearing, not on the ground that his complaint did not set out a cause of action, but, solely for the reason that, even if the college did destroy his farm the Court had no jurisdiction over a public agent.

"If the State had in so many words granted the college authority to take or damage the plaintiff's property for its corporate advantage without compensation, the Constitution would have substituted liability for the attempted exemption."

"Most of them (cited cases) were actions for torts committed, not by the public corporation itself, but by officers of the law. These public corporations were held free from liability in the suit:"

And, as declared by this Court in commenting upon the Hopkins Case, in *Irvine v. Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363:

"On appeal the Supreme Court of the United States reversed the judgment of this Court holding that the flooding of plaintiff's land was the taking of private property without due process of the law, and that the taking was by the corporation itself for corporate purpose, and not by its officers or agents. As we understand, it was on these grounds that the case was distinguished from *Gibbes v. Beaufort, supra,* and other cases decided in this State."

It is said in the opinion in the Hopkins Case:

"Undoubtedly counties, cities, townships, and similar bodies politic often have a defense which relieves them from responsibility where a private corporation would be liable."

That defense is not specified, but it can refer to no other than that sustained in *Gibbes v. Beaufort,* namely, that, being governmental agencies, they are not responsible in damages for the nonfeasance or misfeasance of their agents in the performance of governmental duties.

The distinction is this: If the tort complained of was an act done or specifically directed by the defendant not in the line of its governmental duties, or improperly done, and resulted in the damaging or taking of the property of the plaintiff, without compensation, the defendant, even

though a political subdivision of the State or an agent of the State, is responsible in damages to the plaintiff. The State cannot authorize its agent or a political subdivision to deprive a citizen of his property without just compensation.    But if the tort complained of was the result of the nonfeasance or misfeasance of the officers of the political subdivision in regard to their public duties, the political subdivision is not liable, unless expressly made so by statute; the liability is that of the offending officers alone.

It is alleged in the complaint that the injury was sustained in consequence of the negligent conduct of the agents and servants of the county of Richland, and therefore comes within the second alternative of the rule just stated. Even if the work was directed by the corporation in the line of its governmental duties, and carefully  done  the corporation is not responsible.

"Authority to establish grades for streets and to grade them, involves the right to make changes in the surface of the ground, which may affect injuriously the adjacent property owners; but where the power is not exceeded, there is no liability, unless created by special constitutional provision or by statute (and then only in the mode and to the extent provided), for the consequences resulting from the power being exercised and properly carried into execution. On the one hand, the owner of the property may take such measures as he deems expedient to keep surface water off from him, or turn it away from him, or turn it away from his premises onto the street; and on the other hand, the municipal authorities may exercise their lawful powers in respect to the gradation, improvement, and repair of streets, without being impliedly liable for the consequential damages caused by surface water to adjacent property." 4 Dillon, M. C. (3d Ed.) § 1733.

The observations of Mr. Justice Hydrick in the Triplett Case as to the applicability of the Hopkins Case to the facts

of the Mayrant Case are easily reconcilable with the principle above announced, upon the ground that in the Mayrant Case the act complained of was the corporate act of the city, and did not result simply from an act of nonfeasance or misfeasance of its officers and agents. As thus construed the remark is entirely correct; but if it was intended to state that under the Hopkins Case the city could be liable for the negligent act of its officers and servants, such conclusion is disapproved.

It is a mistake to suppose, as has been suggested, that the case of *Dunn v. Barnwell,* 43 S. C. 398, 21 S. E. 315, 49 Am. St. Rep. 843, and other cases announcing the same doctrine, are inapplicable to cases involving the taking of property without compensation, and that in this respect they are overruled by the case of *Hopkins v. Clemson College.* On the contrary, the Hopkins Case distinctly recognizes the authority in this State of the Gibbes Case, which is but an earlier expression of the doctrine declared in the Dunn Case, both of which were cases of attempted imposition of liability upon the municipality for the torts of the agents and servants. The effect of the Hopkins Case is not to interfere in the least with the doctrine of these cases for they present different grounds of attempted liability; in them liability is sought to be imposed on the corporation for the negligent act of its agents, while in the Hopkins Case the liability is imposed upon the ground that the tort was that of the corporation itself. What we recognize to be the doctrine of the Hopkins Case is that where the tort was committed by or under the specific direction of the corporation, it cannot claim immunity from suit or immunity from liability, for the reason that neither the State by statute nor the Courts by decision can authorize a political subdivision or an agent of the State to damage the property of a citizen without compensation, but that where the tort was committed by the agents of the political

subdivision, whether it amounted to a taking of property without compensation or not, the plaintiff's remedy is alone against the offending servant, unless the State has by statute provided otherwise.

Another consideration is conclusive of the question at issue: If liability upon the county can be predicated upon the negligent act of its servants, it can only be done upon the principle of "respondeat superior," in the absence of a statute providing otherwise. Unlike the principle "Qui facit per alium facit per se," the principle of "respondeat superior" is based upon public policy, a matter with which the Courts, in the absence of a statute, have a right to deal and which they have the right to construe. The liability of a master for the negligent act of his servant is an imputed, not an absolute liability, and is referable to this principle. The liability of a master for his own acts and those delegated to a servant is an absolute one, referable, so far as the acts of the delegated servant are concerned, to the principle of "Qui facit per alium facit per se." In the application of this principle the Courts have no latitude. It does not depend upon public policy, but upon substantive law. In the application of the other they have great latitude. It is for them to divine what is public policy, and declare whether it demands the application of the principle in certain cases or not.

In the case of *Lindler v. Hospital,* 98 S. C. 25, 81 S. E. 512, the Court declined to extend the doctrine of respondeat superior to a case brought against a charitable corporation for the negligence of an employee, and reaffirmed the principle in *Vermillion v. College,* 111 S. C. 156, 97 S. E. 619.

In view of the decisions of this Court denying liability in municipal corporations for the nonfeasance or misfeasance of their agents, in the absence of a statute providing otherwise, we may safely, in construing and apply-

ing the public policy of the State, decline to extend the doctrine in such cases.

The judgment of this Court is that the orders appealed from be reversed, and that the complaint in each of the cases above stated be dismissed.

MESSRS. RICE and MAULDIN, Circuit Judges, concur.